**Alfred Lee MOSS, Plaintiff,**

v.

**Benjamin WARD, Commissioner of Correctional Services, et al., Defendants.**

**No. 76 Civ. 131.**

United States District Court,
S. D. New York.

July 18, 1977.

Alfred Lee Moss pro se.

Louis J. Lefkowitz, Atty. Gen., State of N. Y., David L. Birch, Asst. Atty. Gen., New York City, for defendants.

POLLACK, District Judge.

This is an action for monetary, injunctive and declaratory relief brought under 42 U.S.C. Section 1983 by a state prisoner acting pro se.

The complaint and amended complaint concern plaintiff's assignment to a special housing unit for disciplinary reasons following imposition of prison discipline on June 18th and July 19th, 1975.

The amended complaint alleges that the defendant prison officials and administrators deprived him of due process, discriminated against him and inflicted cruel and unusual punishment.

Read liberally, the plaintiff's complaint seeks damages for the failure of the defendants to afford him the procedural safeguards he claims he is entitled to in a disciplinary proceeding. He claims the penalties imposed herein approximate the level of those in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

Suffice it to say, Wolff is not applicable to this case in any aspect of it.

On June 18, 1975, plaintiff created a disturbance in the mess hall at the Greenhaven Correctional Facility, was disrespectful to a sergeant and threatened a correction

officer. He was removed to the Special Housing Unit on the order of Captain Roden.

On June 20, 1975, plaintiff appeared before an Adjustment Committee pursuant to 7 NYCRR Part 252. He was held for a Superintendent's Hearing pursuant to 7 NYCRR Part 253.

On June 20, 1975, Correctional Counselor Splain delivered formal charges to plaintiff, and on June 22, 1975, a Superintendent's Hearing was commenced, but not completed at that time.

On June 25, 1975, the plaintiff requested assistance of a staff member, and Correctional Counselor Hutchinson was assigned, and at the joint request of the plaintiff and his counselor, the hearing was adjourned.

On June 29, 1975, a Superintendent's Hearing was commenced. Apparently, the plaintiff decided to walk out of the hearing room before the completion of that hearing.

On July 1, 1975 an investigative report was written by Mr. Hutchinson, addressed to Mr. Fogg, the acting superintendent, on the subject of Alfred Moss' Superintendent's proceeding and regarding the incident of June 18, 1975. That report shows that on June 25th Mr. Hutchinson visited Mr. Moss in the Special Housing Unit, was requested by Mr. Moss to represent him in this matter, and requested that the Superintendent's Hearing be postponed for one week's time. Such request was made in writing and is on file in the Adjustment Committee's records and in the Service Unit records.

Thereafter, on June 30, 1975, Mr. Hutchinson completed his investigation, using the reports referred to in his investigative statement, and including an identification of those who were interviewed.

Mr. Hutchinson's report in review of the four charges, suggested that Charge No. 1 be dismissed, that Moss pleads guilty to Charge No. 2, that Charge 3 be dismissed (although Moss showed disrespect by his own admission since Moss was not guilty of all the specifications therein) and that Moss pleads guilty to Charge No. 4.

This report, submitted in writing by Mr. Hutchinson, was endorsed by the plaintiff, Alfred Moss, with the statement that Mr. Hutchinson's report was true and in order, and, furthermore, that it was not necessary to proceed with him in the proceeding, and requesting a decision thereon.

On July 6, 1975, a Superintendent's Hearing was held. The plaintiff pleaded not guilty, and he was held for a second hearing. On July 14th plaintiff pleaded guilty and received a disposition of 30 days keeplock, plus a disposition of 30 days confined to the Special Housing Unit suspended. He was referred to the Classification Committee for a job change.

Thereafter, on July 19, 1975, the plaintiff created a new disturbance, in which it was charged that he had assaulted a sergeant and a corrections officer. In this connection, on July 21, 1975, the plaintiff appeared before the Adjustment Committee and was referred to a Superintendent's Hearing. He appeared at such hearing on July 27, 1975, and denied all the charges. He was held for a second hearing.

On August 3, 1975, a Superintendent's Hearing was held by Deputy Superintendent Curry at which the plaintiff refused to appear, and in his absence was found guilty. His alleged reason for not appearing was that his due process rights were in some way violated. The previous suspended sentence of 30 days confinement to the Special Housing Unit was imposed, as was an additional 60 days confinement to the Special Housing Unit, with 30 days suspended.

During the period of confinement to the Special Housing Unit, according to the records, the plaintiff received one visit by his parents, on July 13, 1975.

Plaintiff asserts six basic grievances in his pleadings. First, he complains that when he was placed in the Special Housing Unit he was not told what his status was; second, that while in the Special Housing Unit he was denied access to the general population visiting area; third, that he should have been brought before a court of law on the charges that led to his confine-

ment in the Special Housing Unit, instead of being subject to prison disciplinary proceedings; fourth, that the prison superintendent refused to forward letters to prison employees asking why they had not pressed charges in a court of law, or else ordered those employees not to respond to plaintiff; fifth, that various Corrections Department officials who had inspected the prison failed to consult with him or act on his grievances; and, lastly, that he did not receive written notice of charges prior to the disciplinary hearings concerning the June 18th and July 19th incidents, or written decisions thereafter.

It is self-evident that plaintiff's complaints and the evidence adduced at the trial do not amount to constitutional deprivation. Although plaintiff was not given written notice of charges prior to his Adjustment Committee hearings, the Adjustment Committee imposed no sanctions on him; he was merely held for a Superintendent's Hearing.

In fact, the Adjustment Committee was not empowered to order punitive segregation. Plaintiff concedes that he was given formal written notice of charges and notice of disposition in regard to the Superintendent's Hearings which actually imposed his punishment and that he was afforded assistance and an opportunity to be heard. This procedure satisfied the requirements of due process.

Plaintiff's claim that prison officials failed to report an alleged assault by him to the District Attorney for the local county for criminal prosecution does not amount to a constitutional issue. It is settled law that prison officials may deal with infractions of prison rules administratively.

There is no constitutional right to compel the state to institute criminal prosecutions. In any event, the plaintiff was not harmed by the failure to be prosecuted criminally. His administrative punishment was imposed long before any criminal case would have come to trial, and the standards of proof are different in the two proceedings.

Moreover, it is not significant that the prison's rules call for reporting of such inci-

dents to the District Attorney. Not every violation of a prison rule by a prison official is a federal constitutional violation, and in this case the purpose of the rule was not to benefit the prisoners, but, rather, to warn them that misbehavior in jail might subject them to further criminal prosecution.

Plaintiff's claim that he was not told what his status was when he was placed in segregative housing does not state a constitutional claim. In any event, the suggestion is not worthy of belief that the plaintiff was not aware that he was being segregated and then disciplined for creating the disturbances in June and July.

The plaintiff has not pressed the other grievances set forth in his complaint at trial. None of those claims are legally sufficient, even if they had been established factually. The plaintiff does not deny that he was allowed to receive the only visitors who came to see him while he was in Special Housing. He apparently does not contend that he was denied mailing privileges.

No credible proof has been submitted of the bad faith of any defendant in carrying out the acts with which he is charged. Nor has the plaintiff outlined any facts that will support a charge of bad faith.

Moreover, no indication whatever has been given of specific damages for which the plaintiff can be compensated.

It is not the function of the Federal Court to tamper with the prison administration in the minor disciplinary matters which form the bulk of the plaintiff's complaint. Federal Courts should not intervene, absent a significant deprivation of inmates' constitutional rights. Consequently, the plaintiff has failed to establish any claim cognizable under Section 1983, and the complaint must be in all respects dismissed.

However, there remains an aspect to this case that makes it somewhat different than cases normally brought in good faith. The plaintiff in this case has instigated and filed six such cases as he has here, and without adverting to the general character thereof, and judging only this case, the Court finds

that there was no warrant for hailing the defendants into court and consuming the time of counsel for the state and that of the Federal Court in the consideration of the frivolous suggestions relied on here.

A person who is indigent has no constitutional right to access to the courts to prosecute actions that are frivolous and malicious, or even wanton, and although the plaintiff has obtained leave to prosecute this action without pre-payment of costs or giving security therefor, this Court has become satisfied that the action is frivolous and unwarranted and should be dismissed and finds that the costs of such action shall be assessed against the plaintiff.

This necessarily follows because an indigent person has no right to prostitute the processes of the Federal Court by bringing a frivolous and warrantless litigation.

Although we have long recognized attorney's fees may be awarded to a successful party when his opponent has acted in bad faith, frivolously and wantonly for oppressive reasons, little can be gained here in dealing with this case on that level in view of the fact that the representative of the defendants is himself an employee of the state.

Accordingly, the complaint is in all respects dismissed with costs in favor of the defendants against the plaintiff.

The foregoing shall constitute the findings of fact and conclusions of law required by Rule 52(a) of the Federal Rules of Civil Procedure.

So ordered.