**In re Judith BERKAN, Appellant.**

**No. 81–1017.**

United States Court of Appeals,
First Circuit.

Argued April 10, 1981.

Decided May 19, 1981.

---

Morton Stavis, Hoboken, N. J., with whom Pedro Varela, Hato Rey, P. R., Harvey B. Nachman, Santurce, P. R., and Neil Mullin, Hoboken, N. J., were on brief, for appellant.

Marc Johnston, Atty., Civil Division, U. S. Dept. of Justice, Washington, D. C., with whom Raymond L. Acosta, U. S. Atty., San Juan, P. R., Thomas S. Martin, Acting Asst. Atty. Gen., and Barbara L. Herwig, Atty. Civil Division, U. S. Dept. of Justice, Washington, D. C., were on brief, for appellee.

Before ALDRICH and CAMPBELL, Circuit Judges, and WYZANSKI,* Senior District Judge.

LEVIN H. CAMPBELL, Circuit Judge.

Judith Berkan, a member of the bar of the Commonwealth of Puerto Rico and those of other jurisdictions as well, petitioned for admission to the bar of the District Court for the District of Puerto Rico. Pursuant to the local rules of the district

* Of the District of Massachusetts, sitting by designation.

court, she submitted with her petition certificates of good standing from the bars to which she was already admitted and a certificate of good conduct from the Puerto Rico police. Her application was then referred for review to the district court's Committee on Admissions, which recommended to the judges of the district court that she be admitted to practice. One month later, she received a letter from the clerk of the district court that comprised a single sentence: "I am sorry to inform you that your application for admission to the bar has been denied." The local rules providing for no further procedures, Berkan appealed to this court and requests review, alternatively, under our mandamus powers.

> Under the local rules of the district court: any attorney at law certified by the Supreme Court of the Commonwealth of Puerto Rico . . . as having qualified to practice as an attorney and counselor at law before the courts of the Commonwealth, is eligible for admission to practice in the United States District Court for the District of Puerto Rico, provided that his/her application is approved by the Judges of [the District] Court. . . .

Berkan, a member in good standing of the bar of the Commonwealth, apparently met all formal requirements; however, both Berkan and the United States Attorney have suggested that she was denied admission because of her conviction in the district court arising from participation in a political demonstration on a U.S. military reservation in Vieques, Puerto Rico, and because of her failure to obey a civil injunction entered by the district court. Be that as it may, the district court gave no such reasons, nor any reasons, for denying her admission, nor did it offer her any opportunity to provide extenuating reasons or to explain why whatever factors prompted the court's action might be insufficient to justify denying her the right to practice in that court.

■ We agree with Berkan that the procedure afforded her by the district court with respect to her bar application was patently insufficient. Having satisfied the threshold requirements for admission to the bar of the district court, she fell within "the class of those entitled to be admitted to practice under the [district court's] rules," and so "should not have been rejected upon charges of [her] unfitness without giving [her] an opportunity by notice for hearing and answer." *Goldsmith v. United States Board of Tax Appeals*, 270 U.S. 117, 123, 46 S.Ct. 215, 217, 70 L.Ed. 494 (1926). This principle was reaffirmed in *Willner v. Committee on Character and Fitness*, 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963), where the Supreme Court held that an applicant could not be denied admission to the bar without a hearing either before the committee that refused to certify his fitness to practice law or before the court that ultimately declined to admit him to practice. As amplified by Justice Goldberg in his concurring opinion,

> The constitutional requirements in this context may be simply stated: in all cases in which admission to the bar is to be denied on the basis of character, the applicant, at some stage of the proceedings prior to such denial, must be adequately informed of the nature of the evidence against him and be accorded an adequate opportunity to rebut this evidence. As I understand the opinion of the Court, this does not mean that in every case confrontation and cross-examination are automatically required. It must be remembered that we are dealing, at least at the initial stage of proceedings, not with a court trial, but with a necessarily much more informal inquiry into an applicant's qualifications for admission to the bar. The circumstances will determine the necessary limits and incidents implicit in the concept of a "fair" hearing. Thus for example, when the derogatory matter appears from information supplied or confirmed by the applicant himself, or is of an undisputed documentary character disclosed to the applicant, and it is plain and uncontradicted that the committee's recommendation against admission is predicated thereon and reasonably supported thereby, then neither the committee's informal procedures, its ultimate recom-

mendations, nor a court ruling sustaining the committee's conclusion may be properly challenged on due process grounds, provided the applicant has been informed of the factual basis of the conclusion and has been afforded an adequate opportunity to reply or explain. Of course, if the denial depends upon information supplied by a particular person whose reliability or veracity is brought into question by the applicant, confrontation and the right of cross-examination should be afforded. Since admission to the bar is ultimately a matter for the courts, there is ample power to compel attendance of witnesses as required.

373 U.S. at 107–08, 83 S.Ct. at 1182.

■ The United States Attorney argues that the clerk's letter rejecting Berkan's application is neither a final decision appealable under 28 U.S.C. § 1291 nor an appropriate stage for invocation of our power of supervisory mandamus. Before an appeal will lie under section 1291, the government argues, Berkan must complete some sort of further judicial proceeding in the district court challenging the court's purely "administrative" denial of her application. The government also contends, citing to *Goldsmith v. United States Board of Tax Appeals, supra,* that Berkan's failure to request a hearing before the district court makes mandamus an inappropriate remedy. We believe the government is mistaken as to the latter contention and therefore we need not reach the former.[1]

■ Supervisory mandamus may properly be used "to compel [an inferior court] to exercise its authority when it is its duty to do so." *Roche v. Evaporated Milk Association,* 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943). *See Will v. United States,* 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967); *In re Ellsberg,* 446 F.2d 954, 956 (1st Cir. 1971); 9 Moore's Federal Practice ¶ 110.28 (1980). *Goldsmith* and *Willner* make plain that Berkan, whose for-

1. Where a committee charged with reviewing bar applications refuses to certify to the court that an applicant is fit to practice law, and the applicant then petitions the court itself for admission, arguing that the committee's action violated his constitutional rights, the court's subsequent denial of the petition is appealable. *See Willner v. Committee on Character and Fitness,* 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963); *In re Summers,* 325 U.S. 561, 65 S.Ct. 1307, 89 L.Ed. 1795 (1945). In this case, however, the committee recommended that Berkan be admitted and the district court itself denied her petition. Berkan then sought relief in this court. The issue of appealability would seem to turn on the significance of this procedural distinction. (The lack of a docket number for, and formal entry of judgment as to Berkan's petition are not dispositive. *Compare Summers,* 325 U.S. 561, 65 S.Ct. 1307, 89 L.Ed. 1795.)

Put most favorably, we understand the government to argue that in *Willner* and *Summers,* the court's denial of the applicant's petition was appealable because the petition expressly presented the court with the claim that the applicant's rights had been violated. Therefore, in denying the petition the court necessarily passed on the merits of the alleged violation; its action thereby became a final decision upon the applicant's claims and so was appealable. Here, the argument runs, the alleged violation of Berkan's rights did not occur until the court—rather than the committee—denied her application. Because she thereafter sought relief in this court, her claim that the denial of her application violated her rights was never raised before the district court and so is not properly a subject for appeal.

In response, it can be argued that no apparent path lay open to Berkan by which she could have brought her claims before the court. *See infra.* Thus, it would exalt form over substance, and thwart the intent of the Supreme Court, to distinguish *Willner* and *Summers* on this narrow ground.

What little case law is on point is divided. *Compare In re Wasserman,* 240 F.2d 213 (9th Cir. 1956) (denial of petition by court, in absence of assertion of a violation of a right, held not appealable) *and In re Jacobi,* 217 F.2d 668 (D.C. Cir. 1954) *and Brooks v. Laws,* 208 F.2d 18 (D.C. Cir. 1953) *with In re Dreier,* 258 F.2d 68 (3d Cir. 1958) (denial of a petition by court, despite absence of assertion of a violation of a right, held appealable) *and Atchison, Topeka & Santa Fe Ry. v. Jackson,* 235 F.2d 390 (10th Cir. 1956).

It is worth noting that the jurisdictional issue is of little practical significance in this case. As we explained *supra,* Berkan has a right to a hearing on the denial of her application. The absence of appellate jurisdiction would not affect that right, for Berkan would still be free to demand that the court provide her a hearing and the court would be bound to oblige.

mal qualifications appeared in order, had a right to a hearing on the denial of her application before either the district court's Committee on Admissions or before the district court itself. Since it was only the court, not the Committee, that acted unfavorably in Berkan's case, it was the court's duty to provide Berkan with notice of the grounds for its action and an opportunity for a suitable hearing. *Willner*, 373 U.S. at 107–08, 83 S.Ct. at 1182. This could have been done by notifying Berkan that the court was contemplating denying her admission, stating the reasons, and inviting her to be heard in response. Or the court could have notified her that her application had been provisionally denied for specified reasons, and that she could respond and request a hearing within a stated time. Variant approaches can be imagined. But the approach followed was plainly inadequate. Whether denominated "administrative" or "judicial," the court's procedure erroneously conveyed a message that the matter was closed—that nothing more in the way of process was available.

■ Berkan, to be sure, might on her own have pressed the district court for a statement of reasons and hearing—and the court might, or might not, have complied, upon having its attention called to *Goldsmith* and *Willner*. But we believe the district court had a responsibility in these circumstances to advise Berkan, on its own initiative, how she might obtain the basic components of due process. Here neither the court's rules nor the letter from the clerk denying Berkan's application made any mention that Berkan was entitled to reasons and a hearing; and there is nothing in the record or the arguments of the parties to suggest that the district court by unstated but generally understood custom was ready to provide such procedures. For all that appeared, the matter was at an end. In suggesting that Berkan ought to have sought a hearing after receipt of the clerk's letter, the government fails to point out any explicit procedure for so doing, short of

her instituting some sort of further legal proceeding separate from the petition for admission. We are unwilling to refuse Berkan relief simply because she failed to pursue some undefined, extraordinary, and uncertain remedy in the court below.

■ We recognize that in *Goldsmith*, decided in 1926, an unsuccessful applicant for admission to practice before the United States Board of Tax Appeals sought a writ of mandamus to compel his admission and the Court stated that "[u]ntil he had sought a hearing from the board, and been denied it, he could not appeal to the courts for any remedy and certainly not for mandamus to compel enrollment." 270 U.S. at 123, 46 S.Ct. at 217. But not only was *Goldsmith* decided long before *Willner*, the writ sought in *Goldsmith* would have had to run against an independent agency in the executive branch of the government, 270 U.S. at 121, 46 S.Ct. at 217. Unlike such an agency, the District Court for the District of Puerto Rico is subject, in proper circumstances, to the direct supervisory control of this court. *See Will*, 389 U.S. at 107, 88 S.Ct. at 280; *Ellsberg*, 446 F.2d at 956; 9 Moore's Federal Practice, *supra*, ¶ 110.28, at 312–13. In our supervisory capacity, we are entitled—in fact we think we are obliged—to insist that a district court in this Circuit do more than play at cat and mouse with a rejected but seemingly qualified bar applicant, with respect to providing a statement of reasons for her rejection and offering such hearing procedures as may be appropriate in her situation. A federal court, by its silence, may not foist upon one in Berkan's position the burden of somehow compelling it to grant the process to which she is entitled as a matter of fundamental right. Supervisory mandamus is an appropriate means to instruct the district court in this regard. *See Will*, 389 U.S. at 107, 88 S.Ct. at 280.

We therefore direct the judges of the district court to furnish Berkan forthwith with a statement of reasons for their denial of her application for admission to the bar and to provide promptly response and hear-

ing procedures that conform with the due process requirements in *Willner*. Since we are confident the district court will comply with our directions, no actual writ need issue.[2]

*So ordered.*

---

**2.** Berkan asks that we reverse the district court outright, and order her admitted to the bar forthwith. We think this an unacceptable remedy where Berkan's constitutional rights can be preserved by the granting of acceptable procedures on remand, and where, for all we know, there may be legitimate reasons for the district court's action.