**Carlos ROMERO BARCELO, et al., Plaintiffs, Appellees,**

v.

**Harold BROWN, Secretary of Defense, et al., Defendants, Appellees,**

**Carlos Zenon, et al., Plaintiffs, Appellants.**

**No. 80–1471.**

United States Court of Appeals, First Circuit.

Argued June 4, 1981.

Decided Aug. 4, 1981.

---

Pedro J. Saade, Rio Piedras, P.R., with whom Judith Berkan, Hato Rey, P.R., was on brief, for plaintiffs-appellants.

Anne S. Almy, Atty., Dept. of Justice, Washington, D.C., with whom Carol E. Dinkins, Asst. Atty. Gen., Peter R. Steenland, Jr., Attorney, Dept. of Justice, Washington, D.C., were on brief, for defendants-appellees.

Before CAMPBELL and BOWNES, Circuit Judges, and MAZZONE,* District Judge.

LEVIN H. CAMPBELL, Circuit Judge.

This appeal arises from postjudgment proceedings related to assessment of costs for daily transcripts provided without prepayment to allegedly indigent parties during trial. Luis Medina and Carlos Zenon, along with 14 others, are fishermen who live on the island of Vieques. The fishermen joined Carlos Romero Barcelo, Governor of Puerto Rico, in suing the United States Navy to enjoin certain of its operations on Vieques. *Romero Barcelo v. Brown*, 643 F.2d 835 (1st Cir. 1981). Pursuant to 28 U.S.C. § 1915,[1] the fishermen were permitted to file their complaints in forma pauperis. Before the three-month trial began, they asked the court to order that they be given daily transcripts at government expense.[2] The court at first denied the motion, expressing its doubt that section 1915 empowered

---

\* Of the District of Massachusetts, sitting by designation.

1. 28 U.S.C. § 1915 provides in part,

   (a) Any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs or security therefor, by a person who makes affidavit that he is unable to pay such costs or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that he is entitled to redress.

   An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith.

   (b) In any civil or criminal case the court may, upon the filing of a like affidavit, direct that the expense of printing the record on appeal, if such printing is required by the appellate court, be paid by the United States, and the same shall be paid when authorized by the Director of the Administrative Office of the United States Courts.

   . . . . .

   (e) Judgment may be rendered for costs at the conclusion of the suit or action as in other cases, but the United States shall not be liable for any of the costs thus incurred. If the United States has paid the cost of a stenographic transcript or printed record for the prevailing party, the same shall be taxed in favor of the United States.

2. It appears that some or all of the other parties to the case were receiving daily copy.

it to grant such a request. At a later stage of the pretrial proceedings, however, the fishermen renewed their request, this time arguing that a grant of daily transcripts would minimize government expenditures in the long run, because there would "probably" be an appeal, in which case the fishermen would be entitled to a transcript.[3] Persuaded by this reasoning, the court reversed its ruling and ordered that daily transcripts be provided to the indigents; the court did not, however, issue any order directing payment for the transcripts at that time. The transcripts were provided to the fishermen throughout the trial.

After trial but before judgment, the fishermen filed a petition for voluntary dismissal. This action occurred, according to their brief, "after a careful evaluation of the possibilities of obtaining an effective remedy in the case vis-a-vis the further expense and efforts which continuation as a party in the case would require." The court denied the motion, but the fishermen did not participate further in the proceedings in the district court or in the appeal to this court.

More than a year after the district court entered judgment, the court reporter initiated efforts to collect his $3,400 charge for the daily transcripts provided to the fishermen. At the reporter's request, counsel for the fishermen signed form CJA–21, certifying that the charge was for services "necessary to an adequate legal representation or defense in this case."[4] Upon receiving the signed form, the court ordered the parties to appear and show cause "why these fees should be allowed as forma pauperis expenses under either 28 U.S.C. §§ 753 or 1915, or other statutory provision or authority." A hearing was held, of which no transcript has been provided to us. The

---

**3.** 28 U.S.C. § 753, the Court Reporters Act, provides in part as follows:

> (f) Each reporter may charge and collect fees for transcripts requested by the parties, including the United States, at rates prescribed by the court subject to the approval of the Judicial Conference. He shall not charge a fee for any copy of a transcript delivered to the clerk for the records of the court. Fees for transcripts furnished in criminal or habeas corpus proceedings to persons allowed to sue, defend, or appeal in forma pauperis shall be paid by the United States out of money appropriated for that purpose. Fees for transcripts furnished in proceedings brought under section 2255 of this title to persons permitted to sue or appeal in forma pauperis shall be paid by the United States out of money appropriated for that purpose if the trial judge or a circuit judge certifies that the suit or appeal is not frivolous and that the transcript is needed to decide the issue presented by the suit or appeal. Fees for transcripts furnished in other proceedings to persons permitted to appeal in forma pauperis shall also be paid by the United States if the trial judge or a circuit judge certifies that the appeal is not frivolous (but presents a substantial question). The reporter may require any party requesting a transcript to prepay the estimated fee in advance except as to transcripts that are to be paid for by the United States.

From the colloquy it appears that the court reporter had told counsel for the fishermen that, should a transcript for appeal be later ordered, it would be charged as an original rather than as a copy of the daily transcripts that were already being prepared at the request of other parties. The maximum transcript rates allowed by the United States Judicial Conference, in effect during this trial (they have since been revised), were $1.50 per page for an ordinary original transcript, $2.50 per page for an original daily transcript, and $0.50 per page for a copy of either type. The court reporter seems to have construed these as allowing him to charge "original" rates for a later ordered appellate transcript even though all the reporter would have to do is copy an already extant transcript prepared on a daily basis. At very least, this construction would seem questionable. We cannot understand charging full rather than copy rates for a duplicate transcript merely because later ordered.

**4.** Form CJA–21 is ordinarily used to authorize payment of expenses by the United States for indigent criminal defendants and habeas corpus petitioners, pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A(e)(1). That statute permits payment for "investigative, expert, or other services necessary for an adequate defense." 28 U.S.C. § 753(f), the Court Reporters Act, permits payment for transcripts in criminal proceedings for persons proceeding under the Criminal Justice Act. *See* note 3, *supra*. The Criminal Justice Act has no application to civil cases other than habeas petitions. Form CJA–21 indicates on its face that claims for compensation must be reviewed by the court for "compliance with the CJA." The parties have offered us no explanation for the use of this form in this context.

court closed the hearing by ordering that the United States magistrate conduct an investigation "in relation to plaintiffs' request for payment of daily transcripts." Magistrate Diaz then ordered the parties to appear and "show cause why payment of said daily transcripts in forma pauperis should be approved." The fishermen responded with a "motion to quash" the magistrate's investigation, arguing that payment for the transcripts had already been allowed and could not be rescinded, that the investigation was an improper attempt to punish them for their decision to withdraw from the case, and that the investigation violated their rights to equal protection and due process. The magistrate declined to rule on the motion to quash, but recommended to the court that the matter be referred to the United States Attorney's office for investigation. The court adopted that recommendation and ordered the United States Attorney to "investigate the facts surrounding the filing of affidavits in forma pauperis by the various parties to the captioned cases, and to further investigate all matters related to requests for in forma pauperis daily transcripts by said parties, for the purpose of determining whether any of said parties and/or their representatives have abused the processes of this Court or otherwise acted contrary to law." The fishermen again moved to quash the investigation, which the court denied. The fishermen now purport to appeal from denial of that motion.

On appeal, the fishermen make two primary contentions: first, that government payment for the transcripts cannot now be denied; and second, that the investigation[5] in itself violates their rights. In response, the United States Department of Justice has filed a brief acknowledging that its position is not strictly adversarial to that of the fishermen, but nevertheless offering its view that no appealable order has been entered.

Initially, we must determine what, if any, order is before us for review. The district

court has not issued any order with respect to payment for the transcripts; we therefore have no such order before us. The only order of the district court as to which this appeal is timely is the denial of appellants' motion to quash the investigation. But that order can hardly be characterized as a "final decision," appealable under 28 U.S.C. § 1291, since it does not conclude the post-judgment proceeding in which it was issued. The context of the order demonstrates the court's intention that the investigation serve as an intermediate step in its process of deciding how to resolve the problem of payment for the transcripts. An order directing payment—or refusing to do so—would conclude the proceeding and would be appealable under section 1291. But until such an order is entered, the proceeding remains open and there is no final decision for us to review. *See* 9 Moore's Federal Practice ¶ 110.14[1], at 196–98.

Nor is denial of the motion to quash a "collateral" order subject to review under the rule of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). The question of who pays for the transcript is, to be sure, "collateral" to the principal litigation regarding the Navy operations on Vieques, but that litigation has ended. The proceeding in process, having to do with payment for the transcript, has yet to be resolved; it is not finally determined by any order now before us. The court's order to investigate was merely ancillary to its resolution of the transcript issue. That order presents no separable, collateral claim in the *Cohen* sense. *See* 337 U.S. at 546–47, 69 S.Ct. at 1225–1226.

It is true that appellants allege that the investigation, which will have been concluded by the time the fees issue is decided and can be appealed, is an immediate violation of their constitutional rights. But appellants' claims of harassment or constitutional violation cannot make final what is interlocutory, nor can they make collateral some-

---

5. At oral argument, we were informed that the FBI started an investigation but it came to an abrupt halt when the attorney for the plaintiffs refused to allow the FBI to question his clients.

thing that is so intertwined with the payment proceeding itself. If appellants' contention is that the district court's order that the United States Attorney investigate is so improper as to be a "usurpation of power," in the language of *DeBeers Consolidated Mines Ltd. v. United States*, 325 U.S. 212, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945), the proper method for presenting such a claim would be a petition for mandamus rather than an appeal. *See In re Berkan*, 648 F.2d 1386, (1st Cir. 1981); *United States v. Kane*, 646 F.2d 4 (1st Cir. 1981). While appellants have filed no petition for mandamus, we might treat their appeal as such a petition if we saw evidence of circumstances warranting issuance of a writ. But we see no such evidence here. Appellants have pointed to no misconduct or impropriety that might warrant mandamus.

The district court's refusal to authorize payment for the transcripts by the United States, if such a refusal has in fact occurred, was by no means beyond its power; indeed, the court appears rather clearly to lack power to direct such a payment in the absence of an appeal. 28 U.S.C. § 1915(a), *see* note 1, *supra*, permits the court to waive prepayment of costs—that is, the court's own costs—it does not empower the court to order any affirmative expenditure of funds by the United States. *Estabrook v. King*, 119 F.2d 607 (8th Cir. 1941) (predecessor statute); *McClure v. The Salvation Army*, 51 F.R.D. 215 (N.D.Ga.1971). 28 U.S.C. § 753(f) quoted at note 3, *supra*, does provide for payment by the United States for transcripts for indigent civil litigants—but only when such transcripts are "furnished to persons permitted to appeal in forma pauperis," and then only "if the trial judge or a circuit judge certifies that the appeal is not frivolous (but presents a substantial question)." Appellants here neither sought nor received permission to appeal the judgment in forma pauperis; they did not appeal the judgment at all.

The question remains who, if anyone, is to pay the court reporter's fee. The district court's orders thus far suggest that it is considering requiring appellants to do so. Such action would in appropriate circumstances be within the power of the court despite its previous grant of in forma pauperis status to appellants. 28 U.S.C. § 1915(e) provides that "Judgment may be rendered for costs at the conclusion of the suit or action as in other cases." *See Duhart v. Carlson*, 469 F.2d 471 (10th Cir. 1972); *Perkins v. Cingliano*, 296 F.2d 567, 569 (4th Cir. 1961); *Marks v. Calendine*, 80 F.R.D. 24 (N.D.W.Va.1978); *Moss v. Ward*, 434 F.Supp. 69 (S.D.N.Y.1977); *Smith v. Lees*, 431 F.Supp. 923, 927 n.3 (E.D.Pa. 1977). *But see Evans v. Tennessee Department of Corrections*, 514 F.2d 283 (6th Cir. 1975). 28 U.S.C. § 1920 enumerates the items which may be taxed as costs, and includes among them "fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case."

Having the power to assess the court reporter's fee as costs against appellants, the court necessarily has the power to inquire into the propriety or advisability of doing so in the particular situation. Appellants' good faith in participating in the litigation and in seeking in forma pauperis status and payment for daily transcripts is surely relevant to the court's determination. *See Duhart v. Carlson*, 469 F.2d 471 (10th Cir. 1972); *Marks v. Calendine*, 80 F.R.D. 24 (N.D.W.Va.1978); *Moss v. Ward*, 434 F.Supp. 69 (S.D.N.Y.1977). (The court reporter's insistence upon charging an "original" transcript fee if daily copy was not ordered, and the part this played in the imbroglio might also be considered.) *See* note 3, *supra*.

We seriously question, however, the advisability of the court's having directed the United States Attorney to carry out such an inquiry. It has not been pointed out to us how such an inquiry fits within the normal statutory duties assigned to the United States Attorney. The United States Attorney was, moreover, the legal representative of one or more of the parties to the litigation in question; his suitability for such an assignment would seem especially questionable in the circumstances. Moreover, the need for outside investigation is not clear. Equitable determination of whether or not

to charge the transcript fees to appellants as costs would seem possible through the process of reviewing appellants' earlier representations in the record and, if need be, addressing questions to those concerned in open court. The district court might also consider whether the matter could not be disposed of either by having the court reporter write off the charge altogether or at least accept payment from appellants of only his actual costs for making available to them the copies of the transcript he had already prepared for others. Court reporters are paid a substantial salary by the United States government, and rates for transcripts are subject to approval of each district court, within the limitations set by the Judicial Conference. 28 U.S.C. § 753(f). In unusual circumstances such as these the court would be empowered to determine what, if any, compensation less than the usual rates would be fair and reasonable.

*The appeal is dismissed for lack of jurisdiction.*