758 F.2d 1362
 In the Matter of The Suspension of Judith Ward Smith MATTOX,
Attorney, Appellant,
v.
The DISCIPLINARY PANEL OF the UNITED STATES DISTRICT COURT
for the DISTRICT OF COLORADO, Appellee.
 No. 83-2116.
 United States Court of Appeals,
Tenth Circuit.
 April 1, 1985.
 
 Judith Ward Mattox, Englewood, Colo., pro se.
 Kathryn A. Nielson, Denver, Colo. (James A. Clark and John B. Moorhead, also of Baker & Hostetler, Denver, Colo., on the brief), for appellee.
 Before LOGAN, DOYLE and SEYMOUR, Circuit Judges.
 LOGAN, Circuit Judge.
 
 
 1
 Judith Ward Smith Mattox appeals from the judgment of the Disciplinary Panel for the United States District Court for the District of Colorado denying her application for readmission to the bar of that court. Mattox makes several contentions on appeal: (1) because there were no allegations that she was guilty of misconduct in the federal court system, reinstatement by the Colorado Supreme Court automatically qualifies her for reinstatement to practice in the federal court; (2) the federal court was required to apply the same discipline imposed by the state court; (3) the Disciplinary Panel abused its discretion in failing to follow the decision of the Colorado Supreme Court; and (4) the federal court reinstatement proceeding denied Mattox her right to procedural due process.
 
 
 2
 In January 1982 the Colorado Supreme Court suspended Mattox from the practice of law in the courts of that state for a period of one year. See People v. Mattox, 639 P.2d 397 (Colo.1982). This order was based at least in part upon Mattox' failure to reveal disciplinary action taken against her while she was a member of the Kentucky bar. Id. at 399. Upon learning of the Colorado Supreme Court's order, in late January 1982 the United States District Court for the District of Colorado also suspended Mattox from practice in that court "for an indefinite period of time and until further Order of [the] Court...." R. I, 8. The order provided that Mattox could apply for readmission after the expiration of the state suspension and upon readmission to the state bar.
 
 
 3
 When Mattox was reinstated by the Colorado Supreme Court in February 1983, she filed her application for readmission to the bar of the United States District Court for the District of Colorado. That court appointed a Committee on Conduct, a panel of nine lawyers, to investigate the application and make a recommendation. The Committee on Conduct interviewed Mattox in person and four others by telephone, reviewed the file compiled by the Colorado Supreme Court Disciplinary Committee, and filed its report recommending reinstatement. After review, but without a hearing or the taking of additional evidence, a three-judge Disciplinary Panel of the district court denied the application for reinstatement. See In re Mattox, 567 F.Supp. 415 (D.Colo.1983). Mattox learned of the action when she received a copy of the panel's order. Thereafter, she sought and received permission to review the Committee on Conduct's report and then filed a motion for reconsideration of the order denying readmission. The panel denied the motion without comment. Mattox thereupon took an appeal to this court.
 
 
 4
 As Mattox admits, there is no doubt that the federal district court has a right to establish its own standards for admission to practice. See In re Ruffalo, 390 U.S. 544, 547, 88 S.Ct. 1222, 1224, 20 L.Ed.2d 117 (1968); Theard v. United States, 354 U.S. 278, 281-82, 77 S.Ct. 1274, 1276, 1 L.Ed.2d 1342 (1957). Therefore, the only questions properly before us are whether the district court has adhered to its own rules and whether the procedures established meet constitutional standards.
 
 
 5
 Mattox asserts that her readmission is governed by the district court's local Rule 25 in effect at the time she was disciplined (predecessor to current Rule 309), which provided that she should be disciplined to the same extent as imposed by the state court unless the imposition of the same discipline by the federal district court would result in "grave injustice," or the misconduct was held to warrant "substantially different discipline." Thus, she argues, because the district court made no special findings, it was required to suspend her for the same period as imposed by the Colorado Supreme Court. The district court's disciplinary order for suspension, however, did not impose a one-year period, rather it declared suspension "for an indefinite period of time and until further Order of [the] Court." R. I, 8. Mattox did not appeal that order; at this time she must be treated as having acquiesced in the district court's order of indefinite suspension.
 
 
 6
 The local rules in effect at the time Mattox filed for reinstatement do little to clarify the procedures applicable to reinstatement. The only reference to reinstatement was in Rule 23(o), which provided:
 
 
 7
 "(o) Application for Reinstatement.
 
 
 8
 An attorney who has been disbarred may not apply for reinstatement until the expiration of five years from the effective date of the disbarment. Motions for reinstatement of disbarred attorneys shall be heard by the Disciplinary Panel and in all proceedings upon such a motion the cross-examination of the attorney's proof and the submission of evidence if any in opposition to the motion for reinstatement shall be conducted by one or more members of the Committee on Conduct appointed for such purpose by the Chairperson thereof."
 
 
 9
 Mattox argues that this rule demonstrates that she was entitled to a hearing before the court. The district court obviously did not consider this rule applicable to Mattox' case, and we agree. The procedures for reinstatement that Rule 23(o) describes apply to "disbarred" attorneys. If the court deemed Mattox disbarred, it could not, according to its own rule, have considered her application prior to the expiration of five years. Further, the other provisions within Rule 23, which require more rigorous proceedings, including a hearing following the filing of a formal complaint and answer, apparently are intended to cover disbarment or other disciplinary proceedings rather than requests for readmission. See Local R. of Practice 23(d)-(k), (n), (p) (D.Colo.) (1983) (revoked).[1]
 
 
 10
 The district court purported to act under Local Rule 1, which covered general requirements for admission to its bar, see 567 F.Supp. at 416-17, although it used its Committee on Conduct as an investigative body without specific provision therefor in its rules. Rule 1 merely provided that for admission to practice before the federal district court an applicant be admitted to practice before the Colorado Supreme Court and be of good moral character. In view of the absence of any requirements for readmission separate from those governing initial admission, we cannot say that this was an inappropriate rule to apply. Much like a state supreme court, the district court is the final arbiter of the meaning of the rules that it establishes. We will not second-guess the district court's interpretation of its own rules.
 
 
 11
 Therefore, the principal issue we must decide is whether the constitutional requirements of procedural due process mandate more, in the way of notice and hearing, than this applicant was afforded. It is clear that federal courts must afford attorneys some due process rights before suspending or disbarring them.[2] We view Mattox' petition for reinstatement, however, as more akin to a case involving initial admission than to one involving suspension or disbarment.
 
 
 12
 State courts must afford attorneys due process rights before denying their admission to the state bar on grounds of questionable moral character. See Willner v. Committee on Character and Fitness, 373 U.S. 96, 102-05, 83 S.Ct. 1171, 1179-81, 10 L.Ed.2d 224 (1963). Such due process rights exist because, according to the Court, the right to practice law "is not 'a matter of grace and favor.' " Id. at 102, 83 S.Ct. at 1179 (quoting Ex parte Garland, 71 U.S. (4 Wall.) 333, 379, 18 L.Ed. 366 (1867) ). See Supreme Court of New Hampshire v. Piper, --- U.S. ----, ----, 105 S.Ct. 1272, 1276-78, 84 L.Ed.2d 205 (1985) (characterizing the right to practice law as a "fundamental right"). While the admitting court is afforded latitude in determining what constitutes good character, its criteria for when an applicant should be denied admission on the ground of bad character are subject to review by the Supreme Court of the United States. See Schware v. Board of Bar Examiners, 353 U.S. 232, 238-40, 77 S.Ct. 752, 755-56, 1 L.Ed.2d 796 (1957); Konigsberg v. State Bar of California, 353 U.S. 252, 273, 77 S.Ct. 722, 733, 1 L.Ed.2d 810 (1957). There have been many post-Willner cases, but most have substantially repeated the dictum in Justice Goldberg's concurring opinion as the standard required to accord procedural due process to an applicant.
 
 
 13
 "The constitutional requirements in this context may be simply stated: in all cases in which admission to the bar is to be denied on the basis of character, the applicant, at some stage of the proceedings prior to such denial, must be adequately informed of the nature of the evidence against him and be accorded an adequate opportunity to rebut this evidence. As I understand the opinion of the Court, this does not mean that in every case confrontation and cross-examination are automatically required. It must be remembered that we are dealing, at least at the initial stage of proceedings, not with a court trial, but with a necessarily much more informal inquiry into an applicant's qualifications for admission to the bar. The circumstances will determine the necessary limits and incidents implicit in the concept of a 'fair' hearing. Thus, for example, when the derogatory matter appears from information supplied or confirmed by the applicant himself, or is of an undisputed documentary character disclosed to the applicant, and it is plain and uncontradicted that the committee's recommendation against admission is predicated thereon and reasonably supported thereby, then neither the committee's informal procedures, its ultimate recommendations, nor a court ruling sustaining the committee's conclusion may be properly challenged on due process grounds, provided the applicant has been informed of the factual basis of the conclusion and has been afforded an adequate opportunity to reply or explain. Of course, if the denial depends upon information supplied by a particular person whose reliability or veracity is brought into question by the applicant, confrontation and the right of cross-examination should be afforded. Since admission to the bar is ultimately a matter for the courts, there is ample power to compel attendance of witnesses as required."
 
 
 14
 373 U.S. at 107-08, 83 S.Ct. at 1182.
 
 
 15
 We must consider whether the constitutional requirements of procedural due process applicable to state court admissions are equally applicable to admission or readmission to the bars of federal district courts. The district court in the case before us inferred that there is a difference between required federal and state procedures when it emphasized that the Supreme Court of Colorado had to concern itself with Mattox' right to sustain a livelihood, but spoke of the federal court as one of limited jurisdiction in which the purpose of bar membership is only to engage in litigation. 567 F.Supp. at 417. The opinion also stressed the complexity of federal court litigation and the need for attorneys to be trustworthy and reliable. Id.
 
 
 16
 The reasons for procedural protection in the fact-finding process for bar admission decisions advanced in Willner, we believe, apply equally to federal and state courts. Indeed the seminal case establishing the principle that lawyers do not hold office as a matter of grace or favor, Ex parte Garland, 71 U.S. (4 Wall.) 333, 18 L.Ed. 366 (1867), involved an attorney seeking admission to practice before a federal court. We acknowledge that admission to the bar of federal courts is "exclusively for the purpose of licensing one to represent parties in litigation," and that the federal courts reasonably may impose different skill requirements upon applicants for admission than the state courts. See Report and Tentative Recommendations of the Committee to Consider Standards for Admission to Practice in the Federal Courts, 79 F.R.D. 187, 195 (1978). Federal courts may also set their own moral standards for admittees,see, e.g., Carver v. Clephane, 137 F.2d 685 (D.C.Cir.1943), although a recent study has demonstrated that bar admission committees and courts have had great problems determining and fairly applying moral character standards. See Rhode,Moral Character as a Professional Credential, 94 Yale L.J. 491, 515-17, 529-46, 570-84 (1985). Any standard adopted, however, should satisfy the requirements of specificity and regularity of application that give content to the due process guarantees of the constitution. This is an area in which procedural and substantive concerns merge, lest a "procedural facade ... shore up a fundamentally bankrupt structure." Id. at 586.
 
 
 17
 We perceive no rational basis for differentiating, for constitutional due process purposes, between litigating lawyers for whom federal admission may be essential, and office practitioners, who only need a state license to carry on their law practice. Garland noted that the right of an attorney to practice law "confers upon him [the right] to appear for suitors, and to argue causes...." 71 U.S. (4 Wall.) at 379. The latest Supreme Court case in this area, striking down New Hampshire's residency requirement for lawyers, Piper, 105 S.Ct. 1272, made no suggestion of a distinction between office practice and litigation, and in fact emphasized lawyers' duties as litigators. Prospective clients are usually not able to predict whether their problems will end in litigation, and if so whether they may need to be in federal court instead of state court. In re Roberts, 682 F.2d 105 (3d Cir.1982), in stating that the interests of the public support a requirement of state bar admission as a prerequisite to federal bar admission (a holding that may be suspect after Piper ), declared: "[W]hen a choice of either a federal or a state forum is available in a particular case an attorney admitted only to the federal court may choose that forum solely for that reason, possibly disregarding the interests of his client." 682 F.2d at 108. The same may be said for lawyers admitted only in state court, who may choose the state forum, against the interest of their clients, because they cannot practice in the federal court.
 
 
 18
 The Supreme Court long ago recognized in an analogous case the importance of procedural protections as a necessary check upon federal courts' independence in reaching separate determinations of a person's moral character. In Goldsmith v. United States Board of Tax Appeals, 270 U.S. 117, 46 S.Ct. 215, 70 L.Ed. 494 (1926), the U.S. Board of Tax Appeals denied an accountant's application to practice before the Board. In dictum, the Court said that because the applicant had shown he was within the class of people objectively entitled to be admitted to such practice, the Board could only deny his application on the ground of unfitness, after "fair investigation, with such a notice, hearing and opportunity to answer ... as would constitute due process." Id. at 123, 46 S.Ct. at 217 (citations omitted). Willner relied heavily on this case to establish the analogous right of admission to practice law in state courts. See 373 U.S. at 103, 83 S.Ct. at 1180.
 
 
 19
 The issue of whether an applicant for admission to the bar of a federal district court has an interest protected by the Due Process Clause has seldom been litigated in recent years because the courts have afforded applicant attorneys rather full hearings. See, e.g., Lark v. West, 289 F.2d 898, 899 (D.C.Cir.1961) (per curiam) (The district court's committee on admissions engaged in a fair investigation of the facts, conducted a hearing at which the applicant testified, and gave careful consideration to all the evidence. 182 F.Supp. 794, 795); Carver, 137 F.2d at 685 (the district court's committee on admissions conducted a "full hearing" at which the applicant testified at length and other witnesses testified by affidavit).
 
 
 20
 The only case we have found that might be read to imply that applicants for federal bar admission have no due process rights is Leis v. Flynt, 439 U.S. 438, 99 S.Ct. 698, 58 L.Ed.2d 717 (1979) (per curiam). That case held that an out-of-state lawyer seeking to appear pro hac vice in an Ohio state court did not have an interest protected by the Due Process Clause of the Fourteenth Amendment. The situation in Leis is quite different from the case at bar, however, in which the applicant seeks permission to practice in the federal district court in the state where she maintains her only law office. See Piper, 105 S.Ct. at 1278, n. 16.
 
 
 21
 The case before us is in a peculiar posture because the district court's investigative Committee on Conduct recommended Mattox' admission to the bar of the federal district court, and it was the court itself, through its three-judge Disciplinary Panel, that denied admission without notice or hearing. A substantially identical situation, however, was recently before the First Circuit, In re Berkan, 648 F.2d 1386 (1st Cir.1981), and we agree with that court's analysis. In Berkan the court said:
 
 
 22
 "[The applicant] had a right to a hearing on the denial of her application before either the district court's Committee on Admissions or before the district court itself. Since it was only the court, not the Committee, that acted unfavorably in Berkan's case, it was the court's duty to provide Berkan with notice of the grounds for its action and an opportunity for a suitable hearing. Willner, 373 U.S. at 107-08, 83 S.Ct. at 1182. This could have been done by notifying Berkan that the court was contemplating denying her admission, stating the reasons, and inviting her to be heard in response. Or the court could have notified her that her application had been provisionally denied for specified reasons, and that she could respond and request a hearing within a stated time. Variant approaches can be imagined. But the approach followed was plainly inadequate. Whether denominated 'administrative' or 'judicial,' the court's procedure erroneously conveyed a message that the matter was closed--that nothing more in the way of process was available."
 
 
 23
 648 F.2d at 1390.
 
 
 24
 Mattox here received an explanation of the basis for the district court's denial of her application for readmission. The court said that she "engages in recurrent episodes of dissimulation," "is incapable of candor," and "her explanations of questionable conduct even when under oath amount at best to an insouciant disregard for accuracy and consistency." 567 F.Supp. at 417. The district court is entitled to make such findings which, if supported by the record, constitute a valid basis for denying her readmission. See Carver, 137 F.2d at 686; Schware, 353 U.S. at 240, 77 S.Ct. at 756. But it may not make such a determination without affording her an opportunity to be heard. Mattox was interviewed by the Committee on Conduct; the Committee interviewed others and compiled a documentary record. Mattox did not know the content of the Committee's record, did not know the Committee's concerns except as revealed to her in the interview and from what she could surmise because of her prior suspension, and did not know the Committee's recommendation, until she was permitted to view, but not copy, the report pursuant to her petition after being notified that the district court had refused her admission.
 
 
 25
 Like the Willner dictum and the First Circuit in Berkan, we do not intend to impose a rigid format upon the district court, so long as the procedures afford an opportunity for notice and hearing prior to a final decision and provide a record sufficient for appellate review. But the process given to Mattox here was insufficient to satisfy constitutional requirements. Had the Committee on Conduct recommended denial of her application for admission, we think due process would have been satisfied if the Committee had notified her of its intended recommendation, the reasons therefor, and afforded her an opportunity to make a record why the court should not adopt the Committee's recommendation. The district court Disciplinary Panel, in such a situation, could act on the basis of the record so developed and would not have to afford a hearing before the court itself. Cf. Razatos v. Colorado Supreme Court, 746 F.2d 1429, 1434-37 (10th Cir.1984). But when the Committee on Conduct's report is favorable to the applicant and the court itself harbors the belief, on the basis of the report, that the applicant's character does not meet its standards, we hold due process requires that the court give notice and the reasons for its view before its decision is final, and give the applicant an opportunity to respond.
 
 
 26
 REVERSED AND REMANDED for further proceedings consistent herewith.
 
 
 
 [1]
 Rule 23 was amended and renumbered several months after the district court disposed of Mattox' petition. The new rule sets out procedures applicable to applications for reinstatement after suspension, describing a process similar to the procedure followed in the case before us. See Local R. of Practice 307(N) (D.Colo.) (1985)
 
 
 [2]
 See In re Ruffalo, 390 U.S. 544, 550, 88 S.Ct. 1222, 1225, 20 L.Ed.2d 117 (1968) (disbarment from practice before U.S. Court of Appeals); Theard v. United States, 354 U.S. 278, 281-82, 77 S.Ct. 1274, 1276, 1 L.Ed.2d 1342 (1957) (disbarment from practice before federal district court); Selling v. Radford, 243 U.S. 46, 50-51, 37 S.Ct. 377, 378-79, 61 L.Ed. 585 (1917) (disbarment from practice before the Supreme Court of the United States); In re Phelps, 637 F.2d 171, 176 (10th Cir.1981) (disbarment from practice before district court); In re Jones, 506 F.2d 527, 528 (8th Cir.1974) (per curiam) (disbarment from practice before district court)