## IN RE SUMMERS.

No. 205. Argued April 27, 30, 1945.—Decided June 11, 1945.

*Mr. Julien Cornell,* with whom *Messrs. Alfred T. Carton, Charles Liebman* and *Arthur Garfield Hayes* were on the brief, for petitioner.

*William C. Wines,* Assistant Attorney General of Illinois, with whom *George F. Barrett,* Attorney General, was on the brief, for the Justices of the Supreme Court of Illinois, respondents.

*Messrs. Harold Evans, Ernest Angell, Claude C. Smith* and *Thomas Raeburn White* filed a brief on behalf of the American Friends Service Committee, as *amicus curiae,* in support of petitioner.

· MR. JUSTICE REED delivered the opinion of the Court.

Petitioner sought a writ of certiorari from this Court under Section 237 (b) of the Judicial Code to review the action of the Supreme Court of Illinois in denying petitioner's prayer for admission to the practice of law in that state. It was alleged that the denial was "on the sole ground that he is a conscientious objector to war" or to phrase petitioner's contention slightly differently "because of his conscientious scruples against participation in war." Petitioner challenges here the right of the Supreme Court to exclude him from the bar under the due process clause of the Fourteenth Amendment to the Constitution of the United States which secured to him protection against state action in violation of the principles of the First Amendment.[1] Because of the importance of the tendered issue in the domain of civil rights, we granted certiorari.[2] 323 U. S. 705.

---

[1] Fourteenth Amendment:

". . . nor shall any State deprive any person of life, liberty, or property, without due process of law . . ."

First Amendment:

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . ."

Cf. *Board of Education* v. *Barnette,* 319 U. S. 624, 639.

[2] The petition for certiorari was not accompanied by a certified record. Rule 38 (1). It alleged an inability to obtain a record from

Since the proceedings were not treated as judicial by the Supreme Court of Illinois, the record is not in the customary form. It shows accurately, however, the steps by which the issue was developed and the action of the Supreme Court on the prayer for admission to the practice of law in the State of Illinois. From the record it appears that Clyde Wilson Summers has complied with all prerequisites for admission to the bar of Illinois except that he has not obtained the certificate of the Committee on Character and Fitness. Cf. Illinois Revised Statutes 1943, c. 110, § 259.58. No report appears in the record from the Committee. An unofficial letter from the Secretary gives his personal views.[3] A petition was filed in the

the Clerk of the Supreme Court of Illinois because the documents were not in that official's custody. See note 8, *infra*. No opposing brief was filed. After the expiration of the time for opposing briefs, Rule 38 (3), a rule issued "returnable within 30 days, requiring the Supreme Court of Illinois to show cause why the record in this proceeding should not be certified to this Court and also why the petition for writ of certiorari herein should not be granted." Journal, Supreme Court of the United States, October Term, 1944, p. 6. A return was duly made by the Chief Justice and the Associate Justices of the Supreme Court of Illinois which stated the position of the Justices on the certification of the supposed and alleged record and their opposition to the granting of the certiorari. On consideration our writ of certiorari issued, directed to the Honorable, the Judges of the Supreme Court of Illinois, commanding that "the record and/or papers and proceedings" be sent to this Court for review. Journal, Supreme Court of the United States, October Term, 1944, p. 93. The papers comprising the proceedings before the Supreme Court of Illinois were certified to us by the Clerk of that court.

[3] In part it reads:

"I think the record establishes that you are a conscientious objector,—also that your philosophical beliefs go further. . You eschew the use of force regardless of circumstances but the law which you profess to embrace and which you teach and would practice is not an abstraction observed through mutual respect. It is real. It is the result of experience of man in an imperfect world, necessary we believe to restrain the strong and protect the weak. It recognizes the right

Supreme Court on August 2, 1943, which alleged that petitioner was informed in January, 1943, that the Committee declined to sign a favorable certificate. The petition set out that the sole reason for the Committee's refusal was that petitioner was a conscientious objector to war, and averred that such reason did not justify his exclusion because of the due process clause of the Fourteenth Amendment. The denial of the petition for admission is informal. It consists of a letter of September 20, 1943, to the Secretary of the Committee which is set out below,[4] a letter of the same date to Mr. Summers and a third letter of March 22, 1944, to Mr. Summers' attorney on petition for rehearing. These latter two letters are set out in note 8.

The answer of the Justices to these allegations does not appear in the record which was transmitted from the Supreme Court of Illinois to this Court but in their return to the rule to show cause why certiorari should not be granted. The answer is two-fold: First, that the proceedings were not a matter of judicial cognizance in Illinois and that no case or controversy exists in this Court

---

even of the individual to use force under certain circumstances and commands the use of force to obtain its observance.

.          .          .          .          .

"I do not argue against your religious beliefs or your philosophy of non-violence. My point is merely that your position seems inconsistent with the obligation of an attorney at law."

[4] "This Court has an elaborate petition filed by Francis Heisler, an attorney of 77 West Washington Street, Chicago, Illinois, on behalf of Clyde Wilson Summers.

"The substance of the petition is that the Board should overrule the action of the Committee on Character and Fitness, in which the Committee refused to give him a certificate because he is a conscientious objector, and for that reason refused to register or participate in the present national emergency.

"I am directed to advise you that the Court is of the opinion that the report of the Committee on Character and Fitness should be sustained.

"Yours very truly, June C. Smith, Chief Justice."

under Article III of the Federal Constitution; second, that assuming the sole ground for refusing to petitioner admission to practice was his profession of conscientious objection to military service, such refusal did not violate the Fourteenth Amendment because the requirement for applicants for admission to the bar to take an oath to support the Constitution of Illinois could not be met. In view of his religious affirmations, petitioner could not agree, freely, to serve in the Illinois militia. Therefore petitioner was not barred because of his religion but because he could not in good faith take the prescribed oath, even though he might be willing to do so. We turn to consideration of the Justices' contentions.

*Case or Controversy.* The return of the Chief Justice and the Associate Justices states that the correspondence and communications of petitioner with the Justices were not spread upon the records of the Supreme Court of Illinois and that under the law of Illinois this petition for admission to the bar does not constitute a case or controversy or a judicial proceeding but is a mere application for appointment as an officer of the court.[5] We of course accept this authoritative commentary upon the law of Illinois as establishing for that state the non-judicial character of an application for admission to the bar.[6] We take it that the law of Illinois treats the action of the Su-

[5] Other courts reason to the contrary result. *Ex parte Secombe,* 19 How. 9, 15; *Ex parte Garland,* 4 Wall. 333; *Randall* v. *Brigham,* 7 Wall. 523, 535; *In the Matter of Cooper,* 22 N. Y. 67; *Ex parte Cashin,* 128 Miss. 224, 232, 90 So. 850.

[6] Illinois considers that the power and jurisdiction of its Supreme Court with respect to the admission of attorneys are inherent in the judiciary under the constitution of the state, which provides, Article III, for the traditional distribution of the powers of government. Smith-Hurd Illinois Anno. Statutes, Constitution, p. 394; *In re Day,* 181 Ill. 73, 82, 54 N. E. 646. Attorneys are officers of the court, answerable to it for their conduct. *People* v. *Peoples Stock Yards State Bank,* 344 Ill. 462, 470, 176 N. E. 901. The act of admission is an exercise of judicial power, *id.* 470, a judgment, *In re Day,* at p. 97,

preme Court on this petition as a ministerial act which is performed by virtue of the judicial power, such as the appointment of a clerk or bailiff or the specification of the requirements of eligibility or the course of study for applicants for admission to the bar, rather than a judicial proceeding.

For the purpose of determining whether the action of the Supreme Court of Illinois in denying Summers' petition for an order for admission to practice law in Illinois is a judgment in a judicial proceeding which involves a case or controversy reviewable in this Court under Article III, § 2, Cl. 1, of the Constitution of the United States,[7] we must for ourselves appraise the circumstances of the refusal. *Nashville, C. & St. L. R. Co.* v. *Wallace,* 288 U. S. 249, 259. Cf. *Bridges* v. *California,* 314 U. S. 252, 259–60; *Nixon* v. *Condon,* 286 U. S. 73, 88; *First National Bank* v. *Hartford,* 273 U. S. 548, 552; *Truax* v. *Corrigan,* 257 U. S. 312, 324.

A case arises, within the meaning of the Constitution, when any question respecting the Constitution, treaties

---

even though it is not considered a judicial proceeding. In the exercise of its judicial power over the bar, the Supreme Court of Illinois has adopted rules for admission to practice before the courts of that state which permit the admission by the Supreme Court after satisfactory examination by the Board of Law Examiners which includes a certification by a Committee on Character and Fitness as to the applicant's character and moral fitness. Illinois Revised Statutes 1943, c. 110, § 259.58.

[7] Constitution, Art. III, § 2, cl. 1: "The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;—to all Cases affecting Ambassadors, other public Ministers and Consuls;—to all Cases of admiralty and maritime Jurisdiction;—to Controversies to which the United States shall be a Party;—to Controversies between two or more States;—between a State and Citizens of another State;—between Citizens of different States;—between Citizens of the same State claiming Lands under grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects."

or laws of the United States has assumed "such a form that the judicial power is capable of acting on it." *Osborn* v. *Bank,* 9 Wheat. 738, 819. The Court was then considering the power of the bank to sue in the federal courts. A declaration on rights as they stand must be sought, not on rights which may arise in the future, *Prentis* v. *Atlantic Coast Line,* 211 U. S. 210, 226, and there must be an actual controversy over an issue, not a desire for an abstract declaration of the law. *Muskrat* v. *United States,* 219 U. S. 346, 361; *Fairchild* v. *Hughes,* 258 U. S. 126, 129. The form of the proceeding is not significant. It is the nature and effect which is controlling. *Nashville, C. & St. L. R. Co.* v. *Wallace,* 288 U. S. 249, 259.

The brief for the Justices raises the question as to who are the adversary parties. The petition in the state court was entitled, "Clyde Wilson Summers, Petitioner, v. Committee on Character and Fitness for Third Appellate District, Respondent." The prayer sought relief against those named as respondents. The record does not show that any process issued or that any appearance was made. Our rule on the petition for certiorari required the Supreme Court of Illinois to show cause why a record should not be certified and the writ of certiorari granted. The return was by the Justices, not by the Court. The Supreme Court of Illinois, however, concluded that the "report of the Committee on Character and Fitness should be sustained." Thus it considered the petition on its merits. While no entry was placed by the Clerk in the file, on a docket, or in a judgment roll, the Court took cognizance of the petition and passed an order which is validated by the signature of the presiding officer.[8] Where relief is thus sought in a state court against the action of a com-

---

[8] The act of adjudging to which we have referred is contained in a letter addressed to petitioner, which reads as follows:

"Your petition to be admitted to the bar, notwithstanding the unfavorable report of the Committee on Character and Fitness for the

mittee, appointed to advise the court, and the court takes cognizance of the complaint without requiring the appearance of the committee or its members, we think the consideration of the petition by the Supreme Court, the body which has authority itself by its own act to give the relief sought, makes the proceeding adversary in the sense of a true case or controversy.

A claim of a present right to admission to the bar of a state and a denial of that right is a controversy. When the claim is made in a state court and a denial of the right is

---

Third Appellate Court District, has received the consideration of the Court.

"I am directed to advise you that the Court is of the opinion that the report of the Committee on Character and Fitness should be sustained.

"Yours very truly, June C. Smith, Chief Justice."

The letter was certified by the Clerk of the Supreme Court of Illinois under its seal as "filed in this office——— in a certain cause entitled in this Court. Non Record No. 462. In Re Clyde Wilson Summers."

Later another letter was written in regard to the admission which reads as follows:

"March 22, 1944.

"Mr. Francis Heisler, Attorney at Law, 77 West Washington Street, "Suite 1324, Chicago 2, Illinois.

"In re: Clyde Wilson Summers.

"Dear Sir:

"Your petition on behalf of Clyde Wilson Summers to reconsider the prior action of the Court sustaining the report of the Committee on Character and Fitness for the Third Appellate Court District, has had the consideration of the Court.

"I am directed to advise you that the Court declines to further consider its former action in this matter.

"Yours very truly, June C. Smith, Chief Justice."

By stipulation of petitioner and the Justices, the Clerk prepared a supplemental record in this cause which includes the following: (1) a transcript of the proceedings before the Character Committee; (2) the letter of March 22, 1944; (3) a certificate that the transcript is the original and the letter a document of the Supreme Court of Illinois.

made by judicial order, it is a case which may be reviewed under Article III of the Constitution when federal questions are raised and proper steps taken to that end, in this Court.[9]

*Disqualification Under Illinois Constitution.* The Justices justify their refusal to admit petitioner to practice before the courts of Illinois on the ground of petitioner's inability to take in good faith the required oath to support the Constitution of Illinois. His inability to take such an oath, the Justices submit, shows that the Committee on Character and Fitness properly refused to certify to his moral character and moral fitness to be an officer of the Court, charged with the administration of justice under the Illinois law. His good citizenship, they think, judged by the standards required for practicing law in Illinois, is not satisfactorily shown.[10] A conscientious belief in non-

---

[9] In *Bradwell* v. *State,* 16 Wall. 130, this Court took cognizance of a writ of error to an order of the Supreme Court of Illinois which denied a motion of Mrs. Bradwell for admission to the bar of Illinois. The proceeding was entitled by the Supreme Court of Illinois, "In the matter of the application of Mrs. Myra Bradwell for a license to practice as an attorney-at-law." There was an opinion. A writ of error under the Illinois title was issued to bring up the case. The objection to Mrs. Bradwell's admission was on the ground of her sex. As no question was raised as to the jurisdiction of this Court under Article III of the Constitution, the case is of little, if any, value as a precedent on that point. *Arant* v. *Lane,* 245 U. S. 166, 170; *United States* v. *More,* 3 Cranch 159, 172.

[10] Section IX (2) of the Rules for Admission to the Bar reads as follows:

"Before admission to the Bar, each applicant shall be passed upon by the Committee in his district as to his character and moral fitness. He shall furnish the Committee with an affidavit in such form as the Board of Law Examiners shall prescribe concerning his history and environments, together with the affidavits of at least three reputable persons personally acquainted with him residing in the county in which the applicant resides, each testifying that the applicant is known to the affiant to be of good moral character and general fitness to practice law, setting forth in detail the facts upon which such

violence to the extent that the believer will not use force to prevent wrong, no matter how aggravated, and so cannot swear in good faith to support the Illinois Constitution, the Justices contend, must disqualify such a believer for admission.

Petitioner appraises the denial of admission from the viewpoint of a religionist. He said in his petition:

"The so-called 'misconduct' for which petitioner could be reproached for is his taking the New Testament too seriously. Instead of merely reading or preaching the Sermon on the Mount, he tries to practice it. The only fault of the petitioner consists in his attempt to act as a good Christian in accordance with his interpretation of the Bible, and according to the dictates of his conscience. We respectfully submit that the profession of law does not shut its gates to persons who have qualified in all other respects even when they follow in the footsteps of that Great Teacher of mankind who delivered the Sermon on the Mount. We respectfully submit that under our Constitutional guarantees even good Christians who have met all the requirements for the admission to the bar may be admitted to practice law."

Thus a court created to administer the laws of Illinois as it understands them, and charged particularly with the protection of justice in the courts of Illinois through supervision of admissions to the bar, found itself faced with the dilemma of excluding an applicant whom it deemed disqualified for the responsibilities of the profession of law or of admitting the applicant because of its deeply rooted tradition in freedom of belief. The responsibility for choice as to the personnel of its bar rests

knowledge is based. Each applicant shall appear before the Committee of his district or some member thereof and shall furnish the Committee such evidence of his moral character and good citizenship as in the opinion of the Committee would justify his admission to the Bar." Ill. Rev. Stat. 1943, c. 110, § 259.58.

with Illinois.  Only a decision which violated a federal right secured by the Fourteenth Amendment would authorize our intervention.  It is said that the action of the Supreme Court of Illinois is contrary to the principles of that portion of the First Amendment which guarantees the free exercise of religion.  Of course, under our Constitutional system, men could not be excluded from the practice of law, or indeed from following any other calling, simply because they belong to any of our religious groups, whether Protestant, Catholic, Quaker or Jewish, assuming it conceivable that any state of the Union would draw such a religious line.  We cannot say that any such purpose to discriminate motivated the action of the Illinois Supreme Court.

The sincerity of petitioner's beliefs are not questioned. He has been classified as a conscientious objector under the Selective Training and Service Act of 1940, 54 Stat. 885, as amended.  Without detailing petitioner's testimony before the Committee or his subsequent statements in the record, his position may be compendiously stated as one of non-violence.  Petitioner will not serve in the armed forces.  While he recognizes a difference between the military and police forces, he would not act in the latter to coerce threatened violations.  Petitioner would not use force to meet aggressions against himself or his family, no matter how aggravated or whether or not carrying a danger of bodily harm to himself or others.  He is a believer in passive resistance.  We need to consider only his attitude toward service in the armed forces.

Illinois has constitutional provisions which require service in the militia in time of war of men of petitioner's age group.[11]  The return of the Justices alleges that petitioner has not made any showing that he would serve not-

[11] "The militia of the state of Illinois shall consist of all able-bodied male persons resident in the state, between the ages of eighteen and forty-five, except such persons as now are, or hereafter may be, ex-

withstanding his conscientious objections. This allegation is undenied in the record and unchallenged by brief. We accept the allegation as to unwillingness to serve in the militia as established. While under § 5 (g) of the Selective Training and Service Act, *supra,* conscientious objectors to participation in war in any form now are permitted to do non-war work of national importance, this is by grace of Congressional recognition of their beliefs. *Hamilton* v. *Regents,* 293 U. S. 245, 261–65, and cases cited. The Act may be repealed. No similar exemption during war exists under Illinois law. The *Hamilton* decision was made in 1934, in time of peace.[12] This decision as to the powers of the state government over military training is applicable to the power of Illinois to require military service from her citizens.

The United States does not admit to citizenship the alien who refuses to pledge military service. *United States* v. *Schwimmer,* 279 U. S. 644; *United States* v. *Macintosh,* 283 U. S. 605. Even the powerful dissents which emphasized the deep cleavage in this Court on the issue of ad-

---

empted by the laws of the United States, or of this state." (Constitution of Illinois, Art. XII, § 1, Ill. Rev. Stat. 1943.)

"No person having conscientious scruples against bearing arms shall be compelled to do militia duty in time of peace: *Provided,* such person shall pay an equivalent for such exemption." (Constitution of Illinois, Art. XII, § 6, Ill. Rev. Stat. 1943.)

[12] California imposed instruction in military tactics on male students in the University of California. Some students sought exemption from this training on the ground that such training was inconsistent with their religious beliefs. This Court denied them any such exemption based on the due process clause of the federal Constitution. The opinion states, at pp. 262–63:

"Government, federal and state, each in its own sphere owes a duty to the people within its jurisdiction to preserve itself in adequate strength to maintain peace and order and to assure the just enforcement of law. And every citizen owes the reciprocal duty, according to his capacity, to support and defend government against all enemies. *Selective Draft Law Cases, supra,* p. 378. *Minor* v. *Happersett,* 21 Wall. 162, 166."

mission to citizenship did not challenge the right of Congress to require military service from every able-bodied man. 279 U. S. at 653; 283 U. S. at 632. It is impossible for us to conclude that the insistence of Illinois that an officer who is charged with the administration of justice must take an oath to support the Constitution of Illinois and Illinois' interpretation of that oath to require a willingness to perform military service violates the principles of religious freedom which the Fourteenth Amendment secures against state action, when a like interpretation of a similar oath as to the Federal Constitution bars an alien from national citizenship.[13]

*Affirmed.*

MR. JUSTICE BLACK, dissenting.

The State of Illinois has denied the petitioner the right to practice his profession and to earn his living as a lawyer. It has denied him a license on the ground that his present religious beliefs disqualify him for membership in the legal profession. The question is, therefore, whether a state which requires a license as a prerequisite to practicing law can deny an applicant a license solely because of his deeply-rooted religious convictions. The fact that petitioner measures up to every other requirement for admission to

---

[13] *United States* v. *Macintosh,* 283 U. S. 605, 625–26:

"If the attitude of this claimant, as shown by his statements and the inferences properly to be deduced from them, be held immaterial to the question of his fitness for admission to citizenship, where shall the line be drawn? Upon what ground of distinction may we hereafter reject another applicant who shall express his willingness to respect any particular principle of the Constitution or obey any future statute only upon the condition that he shall entertain the opinion that it is morally justified? The applicant's attitude, in effect, is a refusal to take the oath of allegiance except in an altered form. The qualifications upon which he insists, it is true, are made by parol and not by way of written amendment to the oath; but the substance is the same."

the Bar set by the State demonstrates beyond doubt that the only reason for his rejection was his religious beliefs.

The State does not deny that petitioner possesses the following qualifications:

He is honest, moral, and intelligent, has had a college and a law school education. He has been a law professor and fully measures up to the high standards of legal knowledge Illinois has set as a prerequisite to admission to practice law in that State. He has never been convicted for, or charged with, a violation of law. That he would serve his clients faithfully and efficiently if admitted to practice is not denied. His ideals of what a lawyer should be indicate that his activities would not reflect discredit upon the bar, that he would strive to make the legal system a more effective instrument of justice. Because he thinks that "Lawsuits do not bring love and brotherliness, they just create antagonisms," he would, as a lawyer, exert himself to adjust controversies out of court, but would vigorously press his client's cause in court if efforts to adjust failed. Explaining to his examiners some of the reasons why he wanted to be a lawyer, he told them: "I think there is a lot of work to be done in the law. . . . I think the law has a place to see to it that every man has a chance to eat and a chance to live equally. I think the law has a place where people can go and get justice done for themselves without paying too much, for the bulk of people that are too poor." No one contends that such a vision of the law in action is either illegal or reprehensible.

The petitioner's disqualifying religious beliefs stem chiefly from a study of the New Testament and a literal acceptance of the teachings of Christ as he understands them. Those beliefs are these:

He is opposed to the use of force for either offensive or defensive purposes. The taking of human life under any circumstances he believes to be against the Law of God and contrary to the best interests of man. He would if he could, he told his examiners, obey to the letter

these precepts of Christ: "Love your Enemies; Do good to those that hate you; Even though your enemy strike you on your right cheek, turn to him your left cheek also." [1] The record of his evidence before us bears convincing marks of the deep sincerity of his convictions, and counsel for Illinois with commendable candor does not question the genuineness of his professions.

I cannot believe that a state statute would be consistent with our constitutional guarantee of freedom of religion if it specifically denied the right to practice law to all members of one of our great religious groups, Protestant, Catholic, or Jewish. Yet the Quakers have had a long and honorable part in the growth of our nation, and an amicus curiae brief filed in their behalf informs us that under the test applied to this petitioner, not one of them if true to the tenets of their faith could qualify for the bar in Illinois. And it is obvious that the same disqualification would exist as to every conscientious objector to the use of force, even though the Congress of the United States should continue its practice of absolving them from military service. The conclusion seems to me inescapable that if Illinois can bar this petitioner from the practice of law it can bar every person from every public occupation solely because he believes in non-resistance rather than in force. For a lawyer is no more subject to call for military duty than a plumber, a highway worker, a Secretary of State, or a prison chaplain.

---

[1] The quotations are the petitioner's paraphrase of the King James translation of Verses 38, 39 and 44 of St. Matthew, Chapter 5, which read as follows:

"Ye have heard that it hath been said, An eye for an eye, and a tooth for a tooth:

"But I say unto you, That ye resist not evil: but whosoever shall smite thee on thy right cheek, turn to him the other also . . .

"But I say unto you, Love your enemies, bless them that curse you, do good to them that hate you, and pray for them which despitefully use you, and persecute you . . ."

It may be, as many people think, that Christ's Gospel of love and submission is not suited to a world in which men still fight and kill one another. But I am not ready to say that a mere profession of belief in that Gospel is a sufficient reason to keep otherwise well qualified men out of the legal profession, or to drive law-abiding lawyers of that belief out of the profession, which would be the next logical development.

Nor am I willing to say that such a belief can be penalized through the circuitous method of prescribing an oath, and then barring an applicant on the ground that his present belief might later prompt him to do or refrain from doing something that might violate that oath. Test oaths, designed to impose civil disabilities upon men for their beliefs rather than for unlawful conduct, were an abomination to the founders of this nation. This feeling was made manifest in Article VI of the Constitution which provides that "no religious test shall ever be required as a Qualification to any Office or public Trust under the United States." *Cummings* v. *Missouri,* 4 Wall. 277; *Ex parte Garland,* 4 Wall. 333.

The state's denial of petitioner's application to practice law resolves itself into a holding that it is lawfully required that all lawyers take an oath to support the state constitution and that petitioner's religious convictions against the use of force make it impossible for him to observe that oath. The petitioner denies this and is willing to take the oath. The particular constitutional provision involved authorizes the legislature to draft Illinois citizens from 18 to 45 years of age for militia service. It can be assumed that the State of Illinois has the constitutional power to draft conscientious objectors for war duty and to punish them for a refusal to serve as soldiers,—powers which this Court held the United States possesses in *United States* v. *Schwimmer,* 279 U. S. 644, and *United States* v. *Macintosh,* 283 U. S. 605. But that is not to say

that Illinois could constitutionally use the test oath it did in this case. In the *Schwimmer* and *Macintosh* cases aliens were barred from naturalization because their then religious beliefs would bar them from bearing arms to defend the country. Dissents in both cases rested in part on the premise that religious tests are incompatible with our constitutional guarantee of freedom of thought and religion. In the *Schwimmer* case dissent, Mr. Justice Holmes said that "if there is any principle of the Constitution that more imperatively calls for attachment than any other it is the principle of free thought—not free thought for those who agree with us but freedom for the thought that we hate. I think that we should adhere to that principle with regard to admission into, as well as to life within this country." pp. 654–655. In the *Macintosh* case dissent, Mr. Chief Justice Hughes said, "To conclude that the general oath of office is to be interpreted as disregarding the religious scruples of these citizens and as disqualifying them for office because they could not take the oath with such an interpretation would, I believe, be generally regarded as contrary not only to the specific intent of the Congress but as repugnant to the fundamental principle of representative government." p. 632. I agree with the constitutional philosophy underlying the dissents of Mr. Justice Holmes and Mr. Chief Justice Hughes.

The Illinois Constitution itself prohibits the draft of conscientious objectors except in time of war and also excepts from militia duty persons who are "exempted by the laws of the United States." It has not drafted men into the militia since 1864, and if it ever should again, no one can say that it will not, as has the Congress of the United States, exempt men who honestly entertain the views that this petitioner does. Thus the probability that Illinois would ever call the petitioner to serve in a war has little more reality than an imaginary quantity in mathematics.

I cannot agree that a state can lawfully bar from a semi-public position a well-qualified man of good character solely because he entertains a religious belief which might prompt him at some time in the future to violate a law which has not yet been and may never be enacted. Under our Constitution men are punished for what they do or fail to do and not for what they think and believe. Freedom to think, to believe, and to worship, has too exalted a position in our country to be penalized on such an illusory basis. *West Virginia Board of Education* v. *Barnette,* 319 U. S. 624, 643–646.

I would reverse the decision of the State Supreme Court.

MR. JUSTICE DOUGLAS, MR. JUSTICE MURPHY, and MR. JUSTICE RUTLEDGE concur in this opinion.