Stephen MITCHELL, Plaintiff,

v.

Harvey FISHBEIN, Chair of the Departmental Screening of the Supreme Court Panel of the Assigned Counsel Plan for New York County, in his personal and official capacity, et al. Defendants.

No. 01 CIV. 2760(JGK).

United States District Court,
S.D. New York.

Aug. 12, 2002.

Stephen T. Mitchell, New York City, pro se.

Albert Charles Knaus, III, Corp, Counsel of City of New York, New York City, for Isabel Alicia.

### OPINION AND ORDER

KOELTL, District Judge.

The plaintiff, Stephen Mitchell, brought this action against members of the Departmental Screening Committee (the "Committee") of the Assigned Counsel Plan for the Appellate Division, First Department, of the New York State Supreme Court (the "Plan"), including the Committee's former and current Chairs; the former and current Administrators of the Plan; the City of New York; a City employee; and "other unknown persons," pursuant to 42 U.S.C. §§ 1981 and 1983, the anti-discrimination laws of New York City and New York State, and theories of unjust enrichment and quantum meruit. The plaintiff seeks declaratory relief, injunctive relief, and money damages, alleging that he was wrongfully denied re-certification to the panel of attorneys (the "Panel") available for appointment, in accordance with N.Y. County Law Art. 18–B, as counsel for indigent defendants in criminal proceedings in New York County, and that he was not paid for services performed pursuant to the Plan. *See* N.Y. County Law § 722 *et seq.* The Committee members (Andrea Hirsch, Gerald Lebovits, Jeffrey O. Pogrow, and Marvin Ray Raskin), the current and former Chairs of the Committee (Harvey Fishbein and Norman Reiner), and the current and former Administrators of the Plan (George Golfinopoulos and Emily Olshansky) (collectively, the "State Defendants") now move to dismiss the plaintiff's second amended complaint against them pursuant to Fed.R.Civ.P. 12(b)(6).

## I

On this motion to dismiss, the allegations in the Second Amended Complaint are accepted as true. *See Grandon v. Merrill Lynch & Co.,* 147 F.3d 184, 188 (2d Cir.1998). In deciding a motion to dismiss, all reasonable inferences must be drawn in the plaintiff's favor. *See Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995); *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985). Therefore, the present motion should only be granted if it appears that the plaintiff can prove no set of facts in support of his claims against the State Defendants that would entitle him to relief. *See Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Grandon,* 147 F.3d at 188; *Goldman,* 754 F.2d at 1065.

In deciding the motion, the Court may consider documents that are referenced in the Second Amended Complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002); *see also Brass v. Am. Film Techs., Inc.,* 987 F.2d 142, 150 (2d Cir. 1993); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47–48 (2d Cir.1991); *I. Meyer Pincus & Assoc., P.C. v. Oppenheimer & Co., Inc.,* 936 F.2d 759, 762 (2d Cir.1991); *Coffey v. Cushman & Wakefield, Inc.,* No. 01 Civ. 9447, 2002 WL 1610913, at *1 (S.D.N.Y. Jul 22, 2002); *Skeete v. IVF America, Inc.,* 972 F.Supp. 206, 208 (S.D.N.Y.1997).

## II

The Second Amended Complaint sets forth the following facts, which are accepted as true for the purposes of this motion.

The plaintiff is an African–American attorney licensed in the State of New York. (Second Am. Compl. at 1.) The plaintiff was a member of the Panel from approximately 1995 to 1998. (*Id.* ¶ 1.) Prior to becoming a member of the Panel, the plaintiff had served as an Assistant District Attorney in New York County from 1986 to 1989 and had been a member of the 18–B panel in Kings County between 1991 and 1995. (*Id.* ¶ 5.) By April, 1998, the plaintiff had tried more than twenty felony matters to verdict, including three murder trials; had negotiated dozens of felony pleas; and had briefed and argued at least two appeals. (*Id.* ¶¶ 7, 9, 11.) The plaintiff had not been reprimanded for his performance as a defense attorney by any judge, the Panel, or the Kings County panel. (*Id.* ¶¶ 6, 10.)

The plaintiff submitted applications seeking re-certification to the Panel in 1996 and either 1997 or 1998. (*Id.* ¶ 16.) In the attachments to his re-certification application and in an interview with a member of the Committee, the plaintiff complained that: many white members of the Panel were not zealously representing their African–American and Latino clients; the Plan deliberately limited the number of African–American attorneys eligible to try homicide cases; the Committee deliberately denied the re-certification applications of African–American attorneys in an effort to reduce the number of African–American attorneys on the Panel; and the plaintiff's 1995 temporary suspension from the Panel and/or the Kings County panel was racially motivated. (*Id.* ¶¶ 18–21.)

In April, 1998, the plaintiff was notified that he had been denied re-certification to the Panel. (*Id.* ¶ 2.) Like other African–

American attorneys denied re-certification, the plaintiff was not given reasons for the denial. (*Id.* ¶ 22.) The plaintiff alleges that his removal from the panel was pursuant to illegal and unconstitutional practices that were "departures from the procedural norms" generally employed by the Committee and Plan administration. (*Id.* ¶ 22.) The plaintiff alleges that he was not re-certified because the members of the Committee were attempting to reduce the number of African–American attorneys on the Panel and because they were retaliating against the plaintiff for complaining about racial discrimination in the administration of the Plan. (*Id.* ¶¶ 22–25.)

Based on these allegations, the plaintiff has sued five members of the Committee, including its former Chair, in their personal capacities. (*Id.* ¶¶ 14, 26, 38, 50, 74.) The plaintiff has also sued the former Administrator of the Plan in her personal capacity and has sued the City of New York on the basis that it is responsible for her misconduct. (*Id.* ¶¶ 62, 99.) In addition, the plaintiff has sued the current Chair of the Committee, Harvey Fishbein, in both his official capacity (for injunctive relief) and his personal capacity (for money damages). (*Id.* ¶ 86.)

The plaintiff further alleges that he is owed between $85,000 and $100,000 in compensation for his previous representation of indigent defendants pursuant to the Plan. (*Id.* ¶ 100, 102.) The plaintiff has sued the City for that compensation on theories of unjust enrichment and quantum meruit. (*Id.* ¶ 101.) The plaintiff has also sued George Golfinopoulous, the current Administrator of the Plan, and a City employee for withholding the compensation due to the plaintiff. (*Id.* ¶ 103.) The plaintiff alleges that the Administrator and the City employee are withholding his compensation in retaliation for the plaintiff's previous complaints about discriminatory practices in the administration of the Plan and in retaliation for his bringing this action. (*Id.* ¶ 104.)

The plaintiff has requested relief consisting of a declaration that the defendants' conduct was unlawful; compensatory and punitive damages; the money owed to him for past work, with interest; "declaratory and injunctive relief so that he can earn compensation as an indigent defense lawyer and so that he will not be prejudiced with the stigma of being prohibited from membership [in] an association of attorneys"; an order directing the defendants to provide the plaintiff with copies of any and all files kept by them that discuss or concern the plaintiff and to tell the plaintiff why he was not re-certified; and attorneys' fees and costs. (*Id.* at 19–20.)

### III

The defendants argue that the doctrine of judicial immunity renders them absolutely immune from the plaintiff's claims.

■ Judges are absolutely immune from suits for money damages arising from actions taken in their judicial capacity, provided that those actions are not taken in the complete absence of all jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 11–12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (per curiam). As the Supreme Court explained:

> Although unfairness and injustice to a litigant may result on occasion, "it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Id.* at 10, 112 S.Ct. 286 (quoting *Bradley v. Fisher*, 12 Wall. 335 (1872)).

■ "Courts have extended the absolute judicial immunity afforded judges to individuals...who perform functions closely associated with the judicial process." *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir.1997); *see Cleavinger v. Saxner*, 474 U.S. 193, 200, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985). Determination of whether an official is entitled to absolute immunity requires a court to "look to the particular acts or responsibilities that the official performed." *King v. Simpson*, 189 F.3d 284, 288 (2d Cir.1999). Thus, courts have extended absolute immunity to a variety of non-judicial officials, including state bar disciplinary committee members taking part in attorney suspension proceedings, *Sassower v. Mangano*, 927 F.Supp. 113, 120–21 (S.D.N.Y.1996), *aff'd*, 122 F.3d 1057, 1997 WL 557616 (2d Cir.1997); parole board officials deciding whether to grant, deny, or revoke parole, *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir.1999); court clerks performing scheduling duties, *Rodriguez*, 116 F.3d at 67; and law clerks assisting judges in the performance of the judges' judicial functions, *Oliva v. Heller*, 839 F.2d 37, 39 (2d Cir.1988).

■ In deciding whether to re-certify the plaintiff to the Panel, the State Defendants were performing a function closely associated with the judicial process. The appointment of counsel is a judicial act. *Davis v. State of New York*, No. 90 Civ. 6170, 1991 WL 156351, at *2 (S.D.N.Y. Aug.6, 1991). The Plan is administered under rules adopted by, and issued under the authority of, the justices of the New York State Supreme Court, Appellate Division, First Department, and forms an integral part of the process of appointing counsel for indigent defendants. *See* N.Y. Comp.Codes R. & Regs. tit. 22, § 612.0.

The decision not to re-certify the plaintiff cannot be said to have been taken in the absence of jurisdiction. The justices of the Appellate Division specifically delegat-

ed to the Committee "the authority and responsibility to oversee the operation of the [Plan] and to consider all matters which pertain to the performance and professional conduct of individual [Plan] attorneys in their assignments as [Plan] attorneys and the representation of indigent parties in criminal proceedings," as well as the ability to determine "whether an applicant is qualified for membership on any of the panels." *Id.* §§ 612.3, 612.6. Thus, in this case, the State Defendants are entitled to absolute immunity from any claims for money damages with regard to the denial of the plaintiff's application for re-certification.

■ The Supreme Court has determined that there is no absolute judicial immunity from claims for prospective injunctive relief. *Pulliam v. Allen*, 466 U.S. 522, 536–543, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984). However, Congress has now provided that "injunctive relief shall not be granted" in a § 1983 action brought against "a judicial officer for an act or omission taken in such officer's judicial capacity," "unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; *see Kampfer v. Scullin*, 989 F.Supp. 194, 201 (N.D.N.Y. 1997) (discussing effect of Federal Courts Improvement Act of 1996, Pub.L. 104–317, 110 Stat. 3847 (1996)). Like judicial officers, officials entitled to absolute immunity may not be sued for injunctive relief under § 1983 if the plaintiff fails to allege that either a declaratory decree was violated or declaratory relief was unavailable. *See Montero*, 171 F.3d at 761.

In this case, the plaintiff does not allege the violation of a declaratory decree was violated or the unavailability of declaratory relief. Indeed, "the very nature of plaintiff's claim for both declaratory and injunctive relief indicates that declaratory relief is available." *Jones v. Newman*, No. 98

Civ. 7460, 1999 WL 493429, at *7 (S.D.N.Y. June 30, 1999) (quoting *Finn v. County of Albany,* No. 98–CV–844, 1999 WL 291820, at *5 (N.D.N.Y. May 5, 1999)). Accordingly, the plaintiff's § 1983 claims against the State Defendants for injunctive relief and damages arising from the denial of the plaintiff's re-certification application should be dismissed. However, absolute immunity only bars the plaintiff's § 1981 claims for money damages arising from the denial of the plaintiff's re-certification application.

## IV

■ Under the *Rooker–Feldman* doctrine, a federal district court has no jurisdiction over a case that seeks to reverse or modify a state court decision, or a case in which the federal claims presented are "inextricably intertwined" with the merits of the state court's judgment. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 476, 483 n. 16, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415–16, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *Phifer v. City of New York,* 289 F.3d 49, 55–56 (2d Cir. 2002); *Hachamovitch v. DeBuono,* 159 F.3d 687, 693 (2d Cir.1998); *Moccio v. New York State Office of Court Admin.,* 95 F.3d 195, 198 (2d Cir.1996). Such federal review may only be obtained in the Supreme Court. *Feldman,* 460 U.S. at 476, 103 S.Ct. 1303; *Rooker,* 263 U.S. at 416, 44 S.Ct. 149; *Phifer,* 289 F.3d at 55; *Hachamovitch,* 159 F.3d at 693; *Moccio,* 95 F.3d at 198.

■ In deciding whether the *Rooker–Feldman* doctrine is applicable, "[t]he form of the [State] proceeding is not significant. It is the nature and effect which is controlling." *Feldman,* 460 U.S. at 482, 103 S.Ct. 1303 (quoting *In re Summers,* 325 U.S. 561, 567, 65 S.Ct. 1307, 89 L.Ed. 1795 (1945)). Thus, where a state court declares whether a party has a present right to a benefit, that declaration cannot

be reviewed by a federal district court. *See Feldman,* 460 U.S. at 480–81, 103 S.Ct. 1303 (district court had no jurisdiction over a claim that the District of Columbia Court of Appeals acted unconstitutionally when it decided that a bar applicant was not entitled to a waiver); *Sassower,* 927 F.Supp. at 119 (*Rooker–Feldman* doctrine barred an attorney from prosecuting a civil rights claim where the claims were based on the state court suspension of her attorney's license).

■ Ordinarily, the *Rooker–Feldman* doctrine does not apply to a case in which the decision being directly or indirectly contested is a decision of a state administrative agency that has never been reviewed by a state court, even if the agency proceedings were quasi-judicial in form. *See Birmingham v. Ogden,* 70 F.Supp.2d 353, 362–63 (S.D.N.Y.1999) (collecting cases). In such cases, of course, no state court decision exists for the federal court to defer to. However, where "the administrative body issuing the judgment is an agent of the state court system . . . it [can] be said that the federal courts are sitting in review of a state court judgment, thereby triggering *Rooker–Feldman's* comity and federalism concerns." *Id.,* 70 F.Supp.2d at 363; *see Thomas v. Kadish,* 748 F.2d 276, 281–82 (5th Cir.1984) (district court lacked jurisdiction to hear claim that state Board of Bar Examiners denied bar application for constitutionally impermissible reasons).

■ As explained above, the Plan and Committee function under the authority of the New York courts and the rules adopted thereby. Therefore, this Court has no jurisdiction to reverse or modify their decisions, whether by declaratory or injunctive relief, and must dismiss the plaintiff's claims to the extent that he seeks orders declaring either that the decision denying his certification was wrongful

or that he should be re-appointed to the Panel or that the Panel is required to re-appoint him.

As explained above, the plaintiff is also barred by absolute judicial immunity from obtaining damages from any of the State defendants in their personal capacities which is the only capacity in which they are sued for damages.[1] The declaratory and injunctive relief sought asks the Court, with the exception of the plaintiff's request for records, to enter declaratory or injunctive relief that would modify or reverse the decision of the Committee. This is the precise relief that this Court has no subject matter jurisdiction to entertain under the *Rooker–Feldman* doctrine. In *Feldman* itself, the Supreme Court found, among other things, that the federal district court had no subject matter jurisdiction to entertain a claim for declaratory relief that the failure to grant a certain waiver to an applicant for admission to the bar was a violation of the applicant's constitutional and federal statutory rights and a claim for injunctive relief requiring immediate admission to the bar or permission to take the bar examination. *Feldman*, 460 U.S. at 468, 482–83, 103 S.Ct. 1303.

The one possible claim for declaratory and injunctive relief that would possibly not be barred by the *Rooker–Feldman* doctrine is the plaintiff's request for records and reasons for the denial of certification. That request does not appear to seek to reverse or modify the Committee's decision. While the plaintiff includes a request for such relief, he alleges no separate cause of action based on a claim for records and fails to allege the individual responsibility of any of the individual de-

fendants to provide such information. Moreover, he fails to allege what the federal basis is for requiring such information. However, it cannot be said that the plaintiff could not plead a claim for such information. Therefore, any request for the production of information is denied without prejudice to re-pleading a specific claim for such information against specific defendants together with the statutory basis on which the plaintiff is relying. A decision whether such a claim is also barred must await the pleading of the claim and any defenses to the claim.

V

■ The defendants have not moved to dismiss the claims against the current Administrator of the Plan on either *Rooker–Feldman* or immunity grounds.[2] The plaintiff's claims against the Administrator are based on the Administrator's allegedly wrongful refusal to pay the plaintiff money owed to the plaintiff. Instead, the State Defendants argue that the current Administrator has no involvement in receiving, processing, or paying assigned counsel vouchers, and that such payment is the exclusive responsibility of a New York City employee. However, the plaintiff has alleged that the current Administrator is withholding payments that are due to him. (Second Am. Compl. ¶¶ 103–04.) On this motion, the Court cannot conclude that the claim against the current Administrator of the Plan should be dismissed based on an alleged lack of personal involvement. It may be that such a claim can be dismissed on a motion for summary judgment if the defendants are correct that the Administrator has no involvement in the claim at issue, but there is no such motion.

---

**1.** The *Rooker–Feldman* doctrine can also bar any claims for damages that are inextricably intertwined with the Committee's decision not to re-appoint the plaintiff. *See Phifer,* 289 F.3d at 55–59.

**2.** The defendants have also not asserted any claim of Eleventh Amendment immunity.

### Conclusion

The plaintiff's claims for monetary damages against the State Defendants are dismissed, except for his claims against the current Administrator of the Plan, defendant Golfinopoulos, relating to non-payment of compensation due to the plaintiff. All of the remaining claims against the State Defendants are dismissed except that any claim for records or other information is dismissed without prejudice.

**SO ORDERED.**