KITCHENS, Justice, for the Court.
¶ 1. This appeal arises from a dispute between the Third Circuit Drug Court and the Lafayette County Board of Supervisors regarding Lafayette County’s alleged duty to administer the drug court’s funding and the drug court’s having required that county to place a drug court employee on its payroll. Because Union County has replaced Lafayette County as the lead *786 county for the Third Circuit Drug Court, we dismiss the appeal as moot.[1]
State Drug Courts Advisory Committee
¶ 2. The Alyce Griffin Clarke Drug Court Act is codified as Mississippi Code Sections 9-23-1 through 9-23-51 (Supp. 2011). The expressed intent of the Act is “to facilitate local drug court alternative orders adaptable to chancery, circuit, county, youth, municipal and justice courts.” Miss.Code Ann. § 9-23-3. The Act provides that the Administrative Office of the Courts (AOC) “shall be responsible for certification and monitoring of local drug courts according to standards promulgated by the State Drug Courts Advisory Committee.” Miss.Code Ann. § 9-23-7.
¶ 3. Section 9-23-9 establishes the State Drug Courts Advisory Committee (the Committee) and outlines its structure and duties. The Committee is chaired by the director of the AOC and is composed of seven to eleven members appointed by this Court who are “broadly representative of the courts, law enforcement, corrections, juvenile justice, child protective services and substance abuse treatment communities.” Miss.Code Ann. § 9-23-9(1). The purpose of the Committee is “to develop and periodically update proposed statewide evaluation plans and models for monitoring all critical aspects of drug courts.” Miss. Code Ann. § 9-23-9(1). To this end, the Committee issued, and this Court approved, the Mississippi Drug Court Rules and the Mississippi Drug Court Fiscal Policy.
Facts and Procedural History
¶ 4. The Third Circuit Court District is comprised of Benton, Marshall, Tippah, Union, Calhoun, Chickasaw, and Lafayette Counties, and Honorable Andrew K. Howorth, that district’s senior circuit judge, serves as the Third Circuit’s drug court judge. On December 3, 2007, the Lafayette County Board of Supervisors adopted a resolution to “provide the initial, up-front financial support for the [Third Circuit] Drug Court.” Thereafter, according to the parties, the county made all payments on behalf of the drug court and was reimbursed by the AOC on a monthly basis. The county also “assumed the management of the Drug Court’s financial accounts.” It is unclear whether the county ever incurred any expenses that were not reimbursed by the AOC.
¶ 5. In August 2009, a dispute arose between the Lafayette County Board of Supervisors (Board) and the drug court over whether the drug court should pay rent for the use of space in the county courthouse. The Board says that it requested rental payments after AOC office staff informed the Board that other Mississippi drug courts pay for use of county facilities.
¶ 6. While this dispute was pending, the drug court attempted to hire a part-time law enforcement officer, Pete Samples. According to the drug court, “it was necessary he be placed on the payroll of Lafayette County,” which “would advance the funds for this position and be reimbursed at the end of each month by the state.”
¶ 7. On February 12, 2010, the Board informed the drug court that it would not fund the position until the question of rent was resolved. In response, on April 15, 2010, Judge Howorth sent a letter to the *787 Board’s attorney expressing his intent to request additional funding from the AOC for rental payments. The letter also stated that he would “be entering a sua sponte administrative order to clarify the relationship between the drug court and Lafayette County.”
¶ 8. Shortly after receiving Judge Ho-worth’s letter, the Board voted to discontinue administration of the drug court funds. The Board’s attorney then contacted the AOC regarding the procedure for ceasing its involvement with the drug court. After learning of the county’s decision from the AOC, the drug court entered a fourteen-page order directing the Board to:
(1) Cease and desist from interfering with the independent operation of the Courts, including the Circuit Court and Third Circuit Drug Court; and
(2) Immediately place Pete Samples on the rolls of the Lafayette County employees so that he may begin to serve in the part-time position to which he has been appointed by Drug Court; and
(3) Continue to administer funding for Drug Court and comply with all appropriately authorized requests made by Drug Court, in full compliance with the terms of this Order, until replaced by a new lead county and upon being so notified by the Court; and
(4) Take any and all steps, ordinary and extraordinary, necessary to fully comply with the terms of this Order.
¶ 9. The order, entered June 17, 2010, outlined the history of the Third Circuit Drug Court and various disputes between the drug court and the Lafayette County Board of Supervisors. According to the order, the Board “ha[dj a history of attempted interference with the independent operation of this separate branch of state government.” This “attempted interference” included “efforts to remove the public defenders who work[ed] for the court” and “the disturbing practice of voting on whether or not to approve budget items which had already been authorized by the AOC.”
¶ 10. The Board filed a motion for rehearing or clarification, recognizing that, while the county initially had agreed to serve as the “lead county,” nothing in the Drug Court Act or the AOC rules required the county to continue as such. The Board suggested that an opinion from the Office of the Attorney General be obtained to clarify:
(1) Whether a county or municipality may or is obligated to assist local drug courts in administrative and management capacity as opposed to drug court staff assuming those functions;
(2) Whether a county or municipality may or is obligated to expend local taxpayer monies to defray operational and personnel expenses which are subject to reimbursement by the [AOC] in accordance with an approved local drug court budget;
(3) Whether and to what extent a lead county or municipality may or is obligated to exercise discretion in approving drug court operational and personnel expenses and staffing decisions; and
(4) How long is the lead county obligated to remain as the lead county? Does the lead county have the right to withdraw as the lead county?
¶ 11. The drug court then entered a “final order” which contained some rather stern language directed at the Board.[2] *788 This order did not change anything in the original order, but stated that the Attorney General’s Office would not issue an opinion, and “the avenue of redress [wa]s an appeal to the Mississippi Supreme Court.” The Board has appealed to this Court, asking that we “elariffyj the nature and extent of the administrative responsibilities of the drug courts operating under the Drug Court Act and the rules promulgated by the Advisory Committee and the Administrative Office of the Courts.”
Union County’s assuming the role of “lead county” renders the appeal moot.
¶ 12. Generally, this Court will not adjudicate moot questions. Alford v. Miss. Div. of Medicaid, 30 So.3d 1212, 1214 (Miss.2010) (quoting Allred v. Webb, 641 So.2d 1218, 1220 (Miss.1994)). However, the “public interest” exception allows this Court to review moot issues “when the question concerns a matter of such nature that it would be distinctly detrimental to the public interest that there should be a failure by the dismissal to declare and enforce a rule for future conduct.” Id. (quoting Sartin v. Barlow ex rel. Smith, 196 Miss. 159, 16 So.2d 372, 376-77 (1944)). The Court also has said an exception exists for cases which are “capable of repetition, but would otherwise evade judicial review.” State Oil & Gas Bd. v. McGowan, 542 So.2d 244 (Miss.1989) (citing Pascagoula Mun. Sep. School Dist. v. Doe, 508 So.2d 1081 (Miss.1987); Strong v. Bostick, 420 So.2d 1356 (Miss.1982)).
¶ 13. In the drug court’s brief, the attorney general informed this Court that “[rjecently, Union County replaced Lafayette County as the ‘lead county’ for the Drug Court.” This change was not reflected in the record; therefore, this Court directed the parties to file supplemental briefs addressing whether the appeal was moot “based on Union County’s having replaced Lafayette County as the ‘lead county’ for the Third Circuit Drug Court.” Both parties filed supplemental briefs, and both recognized that the issue is now moot. However, the parties asked that this Court exercise its discretion to review the matter.
¶ 14. Nevertheless, we find that all issues raised on appeal are moot, and the public-interest exception does not apply. The parties agree that the trial court’s order has been rendered moot by Union County’s having assumed the position of “lead county.” Thus, there is no present harm readily apparent (or even alleged) to either the drug court or to Lafayette County or to the public. Moreover, it is not clear from the record that either party ever suffered any demonstrable harm. The order refers to “attempted interference” from the county but does not aver that there was any interruption in court services. Likewise, it appears that Lafayette County has been fully reimbursed by the AOC for all the payments it made. Any harm actually suffered by the County would be limited to the cost of “managing” the drug court’s finances; but the Board does not allege that the county suffered any financial loss as a result of those activities.
¶ 15. In addition, the relief requested is very general in nature, i.e., a “clarification” of “the nature and extent of the administrative responsibilities of the drug courts.” This falls directly within the statutory duties of the Committee. Miss.Code Ann. § 9-23-9(1) (Supp.2011) (stating that the purpose of the Committee is “to develop and periodically update proposed statewide evaluation plans and models for monitoring *789 all critical aspects of drug courts”). An opinion which generally addresses the administrative responsibilities of a drug court would be entirely advisory and not as a result of an actual “case or controversy.” A & F Properties, LLC v. Madison County Bd. of Supervisors, 983 So.2d 296, 302 (Miss.2006) (“[T]he case or controversy requirement mandates ‘an actual controversy over an issue, not a desire for an abstract declaration of the law.’ ”) (quoting In re Summers, 325 U.S. 561, 567, 65 S.Ct. 1307, 89 L.Ed. 1795 (1945)). This Court does not issue advisory opinions. Id.
Conclusion
¶ 16. It is undisputed that the issue is moot, and judicial review is not appropriate, because the parties are asking this Court to issue an advisory opinion addressing general, administrative matters. Accordingly, we dismiss the appeal as moot, noting that the State Drug Court Advisory Committee is better suited to handle any concerns arising from the drug court’s order.
¶ 17. APPEAL DISMISSED AS MOOT.
WALLER, C.J., CARLSON AND DICKINSON, P.JJ., RANDOLPH, LAMAR, CHANDLER, PIERCE AND KING, JJ., CONCUR.

. On February 8, 2012, the Lafayette County Board of Supervisors filed a motion to dismiss the appeal as moot, noting that “the currently elected Lafayette County Board of Supervisors believes that the continued pen-dency of this appeal would not serve the interest of the citizens of Lafayette County.” The Third Circuit Drug Court, by and through the attorney general, opposed the motion. Consistent with the reasons stated in this opinion, the Board's motion is hereby dismissed as moot.

. For example, according to the drug court, the original order had invited the Board to file a responsive motion, "to avoid any misstatement of fact or misapplication of law in the Court’s Order, not to offer to have the Board’s attorney restate the dispute and *788 thereby deliberately or recklessly misrepresent the facts as well as the nature of the problem.”